The New York Life Insurance and Trust Company, as Substituted Trustee under the Will of James Baker, Deceased, Appellant, v. William J. Baker et al., Respondents.

Trusts — Duty of Testamentary Trustee to Create Sinking Fund to Meet Loss on Account of Premiums on Trust Investment. Where there is nothing in the surrounding facts and circumstances to show that a testator in his will intended any different treatment of a trust than that which the language of the clause creating it plainly indicates, viz., that the capital of the trust should be kept intact and that to that end an adequate proportion of the annual income should be set apart to make good the amount paid in premiums in order to secure a proper investment, it is the duty of the trustee, who has invested the trust funds in bonds, purchased at a premium, to set apart out of the income payable to the life beneficiary a sufficient sum each year with which to form a sinking fund of such extent that the principal of the trust will be kept intact and unimpaired. *Matter of Hoyt*, 160 N. Y. 607, distinguished.

*N. Y. Life Ins. & Trust Co.* v. *Baker*, 38 App. Div. 417, modified.

(Argued December 14, 1900; decided February 5, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 15, 1899, modifying and affirming as modified a judgment entered upon the report of a referee.

The plaintiff, as substituted trustee under the will of James Baker, deceased, brought this action for the purpose of securing an accounting of its trust. The order appointing the plaintiff as substituted trustee recited that the preceding trustee, James Baker, Jr., had invested the sum of $91,525 in certain bonds of the United States of the par value of $81,000.

At the time of the making of the order the four and a half per cent bonds, of the face value of $31,000, were worth $35,533.75, and the four per cent bonds of the face value of $50,000 were worth $59,814.15, so that their market value exceeded at that time the amount of the original investment therein of the principal of the estate. About five years after the plaintiff's appointment as trustee, the $50,000 of four per cent bonds were sold for $54,750, while the $31,000 of four and one-half per cent bonds were held until their maturity, when they were paid; so that the proceeds of the bonds at maturity and on sale was less by a number of thousands of dollars than the investment therein. The trustee received the quarterly interest on the bonds and at once paid the whole thereof, less commissions, to the beneficiary of the trust, instead of retaining a part of the interest receipts as a sinking fund with which to keep good the capital of the trust estate, and paying only the remainder thereof to the beneficiary.

The sixth clause of the will of James Baker, by which the trust was created, reads as follows: " And (6) in case my son William Jacob Baker is living at the time of the expiration of the estate hereinbefore devised to my executors, I give, devise and bequeath one of said shares to my friend John H. Lynde in trust, however, to collect and receive the rents, income in dividends and profits thereof, and apply the same to the use of my said son William during his natural life, and after his death, I give, devise and bequeath the whole of said share, with all arrearages of income, to the then surviving lawful child or children of my said son William, and the then surviving lawful issue of any child or children of my said son who may have died before him leaving issue, in equal shares, the issue of any deceased child of my said son, however, to take only the share which the parent would have taken if living; and in case my said son William shall die without leaving any lawful issue him surviving, then I give, devise and bequeath the whole of said share and arrearages of income to my own right heirs and next of kin the same as if I had owned

the said share at the time of my death and had died intestate. And in case my said son William is not living at the expiration of the estate hereinbefore devised to my executors, then I give, devise and bequeath the said share to his lawful issue, if any there be then living. And I give to the said John H. Lynde full power and authority to sell and convey any or all the property, both real and personal, which may vest in him as such trustee at public or private sale, and at such times and upon such terms as he may think best, and invest the proceeds thereof in bonds secured by mortgage on real estate in fee in the cities of New York and Brooklyn, or in the public stocks of the United States or of the State of New York or of the City of New York, and such investments from time to time to change into one or other of said securities at his discretion."

*R. E. Robinson* for appellant. It was no part of the duty of the substituted trustee to look behind the order of appointment for its guidance as to creating a sinking fund. (*Roderigas* v. *E. R. S. Inst.*, 63 N. Y. 460.) The will gives no direction that the premiums paid for investments shall be deducted from income, but on the contrary indicates an intention on the part of the testator that premiums paid on such investments as those in question should be paid out of principal. (*Brown* v. *Chesterman*, 20 N. Y. S. R. 537; *N. Y. L. Ins. & T. Co.* v. *Kane*, 17 App. Div. 542.) Apart from any direction by the creator of a trust, a premium paid upon an investment is to be regarded as a charge against the principal — the life beneficiary being deprived of interest upon it. (*Farwell* v. *Tweddle*, 10 Abb. [N. C.] 94; *Turner* v. *Newport*, 2 Phil. 14; *Cox* v. *Cox*, L. R. [8 Eq.] 343; *Matter of Pollock*, 3 Redf. 100; *People ex rel.* v. *Davenport*, 30 Hun, 177; *McLouth* v. *Hunt*, 154 N. Y. 179; *Hite* v. *Hite*, 93 Ky. 257; *Peckham* v. *Newton*, 15 R. I. 322; *Shaw* v. *Cordis*, 143 Mass. 443; *Hemenway* v. *Hemenway*, 134 Mass. 446.)

*Jesse Grant Roe* for William J. Baker, respondent. The respondent is entitled under the will to all of the income.

(*McLouth* v. *Hunt*, 154 N. Y. 179 ; *Matter of Hoyt,* 160 N. Y. 607.)

*Rastus S. Ransom* and *Porte V. Ransom,* as guardian ad litem, for William Ver Planck Baker et al., respondents. The accounting trustee should have set apart out of the income a sufficient sum each year to form a sinking fund to keep the principal of the trust intact and unimpaired. (*McLouth* v. *Hunt*, 154 N. Y. 179 ; *Matter of Hoyt*, 160 N. Y. 607 ; *N. E. T. Co.* v. *Eaton*, 140 Mass. 532 ; *Balch* v. *Hallet*, 10 Gray, 402.)

Parker, Ch. J.   The only question arising on this appeal to which reference will be made in this opinion is whether this accounting trustee should have set apart out of the income a sufficient sum each year with which to form a sinking fund of such extent that the principal of the trust would be kept intact and unimpaired. The referee before whom the case was tried decided that it was the duty of the trustee under the will to have so set apart out of the income a sufficient sum each year so that at all times the principal of the fund would be unimpaired, and that because of its failure to do so the trustee was properly chargeable for an amount equal to such a portion of the income as should have been so set aside while it was the trustee. Such portion was found to amount to the sum of $5,260.75, and with that sum the trustee was charged.

The Appellate Division affirmed the judgment entered upon the report of the referee in an opinion that fully covers the question whether under this will it was the duty of the trustee to keep intact the principal of the trust fund by devoting yearly such portion of the income of the bonds as should be required to pay the amount of premiums that the trustee was obliged to pay in order to secure the bonds in which the trust estate was invested. We approve of what was said in that opinion and should affirm on it without further comment were it not that since it was written this court has decided the *Hoyt* case (*Matter of Hoyt*, 160 N. Y. 607),

which it is strenuously insisted is in conflict with the views
expressed by the Appellate Division in the case under review.
In support of that contention the provisions of the two wills
creating the trusts and making disposition of the income are
compared, and as a result of the comparison it is urged that
on whichever side of the dividing line in such cases the one
belongs the other should be held to belong also. But the diffi-
culty with the argument is that the decision in the *Hoyt* case
was not based solely upon the language of the will. It was
not held by this court that the language creating the trust,
standing alone, would permit of a construction authorizing the
payment to the life tenant of all of the income arising from
the bonds in which the capital had been invested by the pay-
ment of a large premium. What was held was that it was the
duty of the court to ascertain the intention of the testator in
that regard, and for that purpose the court in construing the
language employed in the will should consider all the sur-
rounding facts and circumstances attending the execution of
the will, and if as a result of such examination the conclusion
should be reached that it was the intention of the testator
that his daughter should have all the income arising from
the investment, without allowing any abatement therefrom
for the purpose of keeping intact the capital of the trust
estate, then such construction should be given to the will,
notwithstanding its phraseology, in obedience to that rule of
construction which, as has often been said by this court, makes
the intention of the party the polar star of construction.
Therefore, at the very outset of the discussion, the learned
judge who wrote the opinion asserted the proposition that in
order to ascertain the intention of the testator in that par-
ticular case it was necessary to go outside of the will and
learn the situation of the parties, the facts and circumstances
surrounding them and the execution of the will by the tes-
tator, in order to determine his intention, and that propo-
sition was stated in these words : " In order to determine the
question presented by this appeal it is necessary to consider
the facts surrounding the execution of the will." Then fol-

lows a detailed account of such facts and circumstances, among which were that the testator was a man of large fortune, estimated at from six to eight million dollars, the bulk of which he bequeathed to his brothers and their children ; that he had only one child, a daughter, and for her benefit he set apart $1,250,000, to be held in trust for her benefit during life, and after her death the principal to go to the brothers and children to whom the bulk of the estate had been given. He appointed one of his brothers a trustee, who insisted upon investing the money in bonds bringing a large premium, and then keeping the capital of the estate intact out of the income derived therefrom.    Aside from the fact that the will directed that the life tenant should receive " the interest, dividends and income therefrom and from each and every part thereof," the will also expressed the desire of the testator to provide for her in a " most bounteous and liberal manner as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires."    After a careful analysis of the facts outside of the will that the court deemed it wise to consider in ascertaining the intention of the testator, together with expressions therein outside of the fourth clause by which the trust for the benefit of the daughter was created, and an extract from the opinion in *McLouth* v. *Hunt* (154 N. Y. 179), asserting the principle that the intention of the testator is to control, and that such intention is " to be derived from the language employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding facts and circumstances of the case,"- the judge proceeds : " In considering the surrounding facts and circumstances in the case at bar, to which we have already alluded, it is reasonable to infer that the testator intended in this sole provision for his daughter that she should receive, as he expresses it in the fourth subdivision of the will, ' the interest, dividends and income therefrom, and from each and every part thereof,' " and thus reasoning the conclusion was reached that while the language employed in the creation of the trust, and the paying over of the income, standing

alone, would not admit of a construction that it was the intention of the testator to impose the loss of premium upon the remainderman, nevertheless, when construed in the light of the other provisions of the will, together with the condition of the parties, and the facts and circumstances surrounding them, it was necessary to hold that it was the intention of the testator to give to the life tenant all of the income of the trust fund, no matter in what securities it should be invested.

In the surrounding facts and circumstances in this case we find nothing that leads us to the conclusion that the testator intended any different treatment of the trust than that which the language of the clause creating it plainly indicates, viz., that the capital of the trust should be kept intact, and that to that end an adequate proportion of the annual income should be set apart to make good the amount paid in premiums in order to secure a proper investment.

The referee made a slight error in calculation resulting in an overcharge of $146, as the respondent concedes.

The judgment should, therefore, be modified by deducting therefrom the sum of $146 as of the date of its entry, and as thus modified should be affirmed, with costs to the guardian *ad litem*, against the plaintiff, appellant.

O'Brien, J. (dissenting). The judgment in this case has determined that the plaintiff, as trustee of a testamentary trust, has violated the provisions of the trust instrument and thus is guilty of a breach of the trust committed to its charge by the testator and the court in that it has suffered the capital of the trust fund to be impaired to the extent of nearly six thousand dollars. I think that this conclusion is unjust to the plaintiff and that the principle decided must operate unjustly upon all trustees similarly situated, and, in the nature of things, there must be numerous trusts to which the rule applies. The reasons upon which this result is based are, as I think, strained, and the argument in support of it is based upon theories and speculations that may be correct enough for an expert or trained financier, but are of very doubtful utility in the practical affairs of life.

The only violation of the trust that the plaintiff has been charged with is that it paid over to the defendant William J. Baker annually the interest on the United States bonds, constituting the capital of the trust. That is literally the full extent of its offending. If, in so doing, the trustee simply obeyed the will of the testator, it ought to be commended and not punished, since that instrument was the charter that prescribed the powers and duties of the trustee and the rights of the beneficiaries. We must, therefore, examine that instrument in order to see whether the claim that the plaintiff violated any of its terms or provisions has any support. By the will of James Baker, who died in 1876, a share of the estate was devised and bequeathed in trust for the use of his son, the defendant William J. Baker, during his life, with remainder to his children, who it seems are the infant defendants in this case. The trustee was given power to sell the property embraced in such share at public or private sale, and at such time and upon such terms as he might think best, and to invest the proceeds in certain securities named, among which were government bonds. The testator then directs the trustee " to collect and receive the income, dividends and profits thereof and apply the same to the use of my said son William during his natural life," with remainder to his children.

It appears that the trustee named in the will refused to act and that the person appointed in his place resigned, and that by an order of the court made on the 4th of August, 1882, the plaintiff was appointed the trustee of the trust and there was passed over to it by the order the *corpus* of the fund, consisting, with a small item of cash, of $50,000 par value in United States registered four per cent bonds and $31,000 par value registered four and a half per cent bonds. The latter were to become due in 1891 and the former in 1907. These bonds had been purchased at a premium, which amounted in all to about $10,000. The plaintiff in the administration of the trust paid to the life beneficiary the interest collected on the bonds and no more, and this is the only act claimed to be in violation of its duty as trustee or of the terms of the will

creating the trust.   A government bond is a contract which
imports a loan of money by an individual to the government
at a stipulated rate of interest payable at a designated time
and place.   The "income and dividends" of such a bond is
generally supposed to be this interest.   It is entirely safe to
say that this was the sense in which the testator used these
words.   The words of the testator should be understood in
their general and popular sense unless it appears that he used
them in some special or restricted sense.   When the testator
directed the creation of a trust consisting of these bonds he
knew that they could not be purchased without payment of a
premium, and yet he directed the trustee to pay the income
and dividends of the same to his son.   It seems to me that no
fair mind can entertain any doubt with respect to the inten-
tion of the testator when he made use of the words "income
and dividends."   He intended that the life beneficiary, his
son, should be paid the interest on the bonds.

But the decision in this case imputes to him quite another
and different intention which it is safe to say never entered
into his mind at all, and that is that he intended to direct the
trustee to pay to his son, not the four per cent or four and a
half per cent interest collected on the bonds, but three per
cent or such other reduced rate of interest as would enable
him to provide a sinking fund to make good the premium paid
for the bonds when they matured.   To say that this is what
the testator intended when he gave the income of the bonds
to his son for life and what the trustee was bound to know
from the use of these words in the will, is to ignore
entirely the natural and general meaning of the testator's
words and to give to them a meaning altogether artificial.
The plaintiff paid over the interest to the son just as
did the prior trustee who formed the trust, and it seems
that the latter was discharged, as a good and faithful serv-
ant of the court, by the same order that appointed the
plaintiff.   The latter might very well suppose that it could
not be subjected to loss and censure by the court for follow-
ing a line of conduct that had been approved in the case of its

predecessor in the trust.   The plaintiff, in assuming the duties
of trustee, had the right to rely not only upon the order of
the court conferring the appointment, which was in the nature
of an adjudication of the question in the very case (*In re Tal-
mage*, 160 N. Y. 512, 515), but upon the general rules of law
as announced in the decisions of this court.   It is no part of
the functions of courts to make new laws and theoretically, at
least, they cannot and do not.   They simply decide what the law
is and always was upon a given state of facts.   Assuming that
proposition to be correct, it is clear that the plaintiff in paying
the interest on the bonds to the life beneficiary violated no
provision of the trust instrument, but, on the contrary, exe-
cuted the will and intention of the testator according to the
law of the land as expressed and defined in at least two recent
decisions of this court.   (*McLouth* v. *Hunt*, 154 N. Y. 179 ;
*Matter of Hoyt*, 160 id. 607.)   In the case last cited nearly
$245,000 of the trust fund had been paid in premiums upon
bonds, and the life tenant was a daughter.   In the case first
cited the life tenants were grandchildren.   In the case at bar
the life tenant is a son and the remaindermen his children.
The direction in each of the three wills to the trustees is sub-
stantially the same.   It was to pay to the life tenant the
income of the bonds during the term of the trust with
remainder to others.   But it was held in both cases cited
that it was the duty of the trustee to pay the full interest
collected upon the bonds to the life tenant, and that is pre-
cisely what the trustee has done in the case at bar, and for
which the decision imputes to it a breach of duty and a viola-
tion of the trust.   The plaintiff followed the law as stated
in these decisions.   If it made a mistake in doing so it must
be because the law, as there announced, was wrong.   An
attempt has been made to draw some distinction between the
cases cited and the one at bar, but the argument in that respect
is so attenuated and fanciful that I will not undertake to
state it.   In my opinion there is no distinction whatever
and no inquiring mind open to conviction will be able
to perceive or state it in such a way as to command

assent.    The decisions of this court which embody not
only a rule of property but a rule of conduct for the guid-
ance of trustees should not be changed for light or tran-
sient causes.    The notion that the premiums upon bonds
should be borne by the life tenant and not by the remainder-
man is not in itself so clear nor in its operation so equitable as
to justify a departure from precedents.    The purchase of gov-
ernment bonds, bearing a low rate of interest, at a premium,
was for the benefit of the remainderman rather than the life
tenant.    The income of the latter was not enhanced, but the
security of the former was made stable and certain.    In such
cases the life tenant should receive the interest without reduc-
tion, unless the testator has directed otherwise in his will.

But quite independent of this question, there is another
feature of the case which seems to me to be even more unjust
to the trustee.    The trust is still in operation and the action
was for an intermediate accounting.    The parties are the trus-
tee, the life tenant and his two children who are entitled to
the remainder.    The action was sent to a referee to hear and
determine.    In his report the findings of fact and conclu-
sions of law are separately stated.    On the trial the plaintiff's
counsel requested the referee to rule and decide that the life
tenant should be adjudged liable to refund any income which
has been paid to him and which should have been set apart
by the trustee as a sinking fund to be added to the principal,
and that the trustee might deduct such income improperly
paid to the life tenant from any payments of income there-
after payable to him.    The referee refused to so find or decide
on the ground that it was not within the issues in the action,
and the plaintiff excepted to this ruling.    I think this ruling
was error for which the judgment should be reversed.    There
were really no issues in the case.    All the parties were before
the court and all prayed that an accounting be had.    The life
tenant did not allege in his answer that he had been paid too
much, nor did the infant defendants allege that their father
had been paid more than he was entitled to.    The question of
over-payments to the life tenant was not raised by any

pleading, but by the court without pleading, as it doubtless might. But the whole case was before the court and it was not embarrassed by any issues whatever. It had the power to do justice to the trustee as well as to the beneficiaries. If the life tenant had been paid too much the court had ample power to order him to restore the excess to the trust fund or to permit the trustee to deduct such excess from any payments made to him thereafter. The court should not have permitted the life tenant and the remaindermen, his two children, to combine and take from the private property of the trustee nearly six thousand dollars for no other reason than that the latter made a mistake in assuming that the direction in the will to pay income authorized it to pay the full interest. The ruling of the learned referee is not calculated, as it seems to me, to promote common honesty or commercial morality on the part of the beneficiaries of a trust when dealing with their trustee. The latter, beyond all question, acted in good faith, and the court had ample power to protect its own officer. If there was a mistake, clearly the life tenant was the beneficiary of it. He, as well as the trustee, was in the attitude of asking the court to do justice, and unless I am greatly mistaken the court had full power in that respect and should have ruled as requested.

The judgment should, for these reasons, be reversed.

Gray, Haight, Landon and Werner, JJ., concur with Parker, Ch. J., for affirmance as modified; O'Brien, J., reads dissenting opinion; Cullen, J., not sitting.

Judgment accordingly.