LYNDE v. LYNDE et al.

(Supreme Court, Appellate Division, Second Department.  June 8, 1906.)

WILLS—CONSTRUCTION—INCOME OR PRINCIPAL OF FUND.
    Where a will authorized a fund to be invested in bonds of the United
    States for the benefit of each of the testator's daughters whom he should
    leave surviving, the income to be received by the executors and paid to
    his daughters, for whose benefit the investment should be made, for their
    natural life, with remainder to their children, the entire income of a
    daughter's share of the bonds was properly paid to her, notwithstanding
    the loss to the fund due to the wearing away of the premium on the bonds.
      Gaynor, J., dissenting.

Appeal from Special Term, Suffolk County.

Action by Charles W. Lynde against Rollin H. Lynde and others, as executors of the will of Augusta H. Lynde, deceased.  From a judgment in favor of defendants, plaintiff appeals.  Affirmed.

Argued before HIRSCHBERG, P. J., and HOOKER, RICH, MILLER, and GAYNOR, JJ.

George S. Ingraham, for appellant.
Tallmadge W. Foster, for respondents.

HIRSCHBERG, P. J.  This appeal requires the determination of the question whether, upon the settlement of the estate of the testator, the loss to a trust fund invested under the provisions of the will for the benefit of a daughter of the testator during life, with remainder to her children, occasioned by the wearing away of the premium on government bonds, is chargeable to the income or to the principal.  It was decided at Special Term that the primary purpose of the testator in the creation of the trust was not the preservation of the corpus of the trust fund for the benefit of the remaindermen, but its investment for the benefit of the life beneficiary.  The fund was invested, as specifically authorized by the will, in bonds of the United States, to quote the language of the will:

"So as to constitute a separate and distinct estate for the benefit of each of my daughters whom I shall leave me surviving; and the interest, income and profit of such share shall be received by my executors and paid to the daughters for whose benefit such investment shall be made for and during her natural life, for her own use, upon her separate acknowledgment or receipt therefor, free from the debts, control, or interference of her husband ; and at her decease, I give and bequeath such share to and among her children share and share alike, forever."

There is nothing in the record tending to indicate that at the time the will was executed the daughter in question had any children.

The general rule is undoubted, and was applied in the decision of New York Life Insurance & Trust Co. v. Baker, 165 N. Y. 484, 59 N. E. 257, 53 L. R. A. 544, namely, that the capital of a trust should be kept intact, and that to that end an adequate proportion of the annual income should be set apart to make good the amount paid in premiums in order to secure a proper investment, and that it is accordingly the duty of the trustee, generally, who has invested the funds in bonds purchased at a premium, to set apart out of the income payable to the life beneficiary a sufficient sum each year to form a sinking

fund adequate to keep the principal of the trust unimpaired. This general rule, however, is qualified by the equally undoubted general rule that the intention of the testator in the creation of the trust must govern, where such intention can be fairly deduced from the language employed or the surrounding circumstances. That qualifying rule was stated in the prevailing opinion in the Baker Case, 165 N. Y. 488, 59 N. E. 258, 53 L. R. A. 544, to require the court to "consider all the surrounding facts and circumstances attending the execution of the will, and if as a result of such examination the conclusion should be reached that it was the intention of the testator that his daughter should have all the income arising from the investment, without allowing any abatement therefrom for the purpose of keeping intact the capital of the trust estate, then such construction should be given to the will, notwithstanding its phraseology, in obedience to that rule of construction which, as has often been said by this court, makes the intention of the party the polar star of construction." It does not appear whether the testator in that case authorized investment in government bonds. Such investment, however, had been made by a preceding trustee. So far as the language of the will could throw any light upon the intention of the testator, it could only operate to suggest the conclusion that it was the intention of the testator that the principal should remain intact, and that the entire income was not necessarily to be paid to the life tenant. The language of the will is that after the death of the life tenant "I give, devise and bequeath the whole of said share, with all arrearages of income," to the remaindermen. It seems to me that under the authorities, which much be regarded in connection with the Baker Case, supra, there is sufficient in the case at bar to justify the conclusion that what the testator had chiefly in mind was the creation of a trust primarily for the benefit of his daughter, and that she should be permitted the use of all the income which it might earn, regardless of the fact, which must be assumed to have been known to the testator, that the authority conferred to invest in government bonds would necessarily cause the payment of a premium which in time would shrink away.

This conclusion is deducible, not only from the authority conferred to make investments of the character considered, but also from the express provision that the income received by the executors should be paid to the daughter for whose benefit the testator declared in express terms that the investment should be made. I cannot see how the direction that the testator should pay over the income which he received without a suggestion that there might be any arrearage of income can be distinguished in principle and effect from that employed by the testatrix in the case of McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230. In that case it does not appear that there was either a direction or authority to invest in government bonds, but securities of that character were transmitted by the testatrix on her death and retained by the trustees, and the direction was for payment to the life tenants "annually from their arriving at age the full income," and there was a suggestion, perhaps remote, that some of the income might remain unpaid at the end of the life period by the provision that the share to be paid to the remaindermen should be

"together with any accumulation thereupon which may remain." Nevertheless, the court held that the direction for the payment of the "full income" was sufficient to indicate that the intention of the testatrix was that the life tenants should receive the whole annual interest on the bonds without diminution to meet depreciation in their market value through their approaching maturity.

I think the view that there is no difference between a direction to pay over the full income and one to pay over the income received is strengthened somewhat by the decision in Matter of Hoyt, 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126. There the direction was that the trustees should apply the income of the trust fund to the use of the testator's daughter for and during her life "in the most bounteous and liberal manner, as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires." It is to be observed that nothing was given to the daughter and nothing directed to be paid over to her. The trust, so far as made for her benefit, was limited to an application for her use by the trustees of the income collected; and, while the language employed was certainly broad enough to include it all, there was not only no express direction to that effect, but the will further provided that at the end of the life estate it was the will of the testator as to the trust fund that "the securities in which the same shall be invested, and any surplus of income therefrom, if any, which shall not have been applied to her use during her natural life, shall, on the death of my said daughter, go and be distributed to and among my nephews and nieces." Nevertheless the court held that it was the intention of the testator, derived from the face of the will and the surrounding circumstances, to impose the loss of the premium upon the remaindermen.

It seems to me that very slight indications are sufficient in this class of cases to support the view that a testator ordinarily intends in the creation of a trust to benefit his children to the extent of the full income in the popular and ordinary sense, where he directs or authorizes an investment in government bonds for the benefit of such children, especially where there is nothing tending to prove the existence of the remaindermen at the time of the making of the will. The fact must be obvious to a testator that the effect of such an investment is to give to the remaindermen the very highest security for the preservation of the principal of the fund, and the high character of the security necessarily tends to reduce the amount of the income which it pays. In such circumstances it is inequitable in a sense to further penalize the life tenant in existence by charging him with the payment of a premium for the benefit of remaindermen, possibly not in esse at the time of the creation of the trust. I think the judgment can be, and should be, affirmed.

·Judgment affirmed, with costs.

HOOKER, RICH, and MILLER, JJ., concur.

GAYNOR, J. (dissenting). By his will Joseph W. Harper directed his real estate to be sold, and divided his estate into several shares to be held in trust by his executors for his wife and children, respectively,

for life, one of the trusts being for his daughter, the plaintiff's mother, viz., to invest her share (the same as the others) in public stocks or bonds of the state or city of New York, or of the United States, or in bonds and mortgages upon real estate, for her benefit for her life, the direction being that "the interest, income and profit of such share" should be received by the executors and paid to the said daughter during her life; and this is followed by a bequest of such share to the children of the said daughter upon her death.

A part of the share allotted for the said daughter in trust by the executors consisted of United States bonds owned by the testator in his lifetime, and, another part was invested in United States bonds by the said executors, such bonds being purchased at a premium.

The market value (i. e., par plus premium) of those owned by the testator in his lifetime was $45,000, when placed in the said trust fund. A part of them were afterwards redeemed by the United States government at par or thereabouts when the redemption time fell in, and the rest of them were sold, all at a loss of $4,575 on the said former market value.

Those purchased by the executors were afterwards redeemed by the United States government at a loss on the purchase price of $3,944.34, except that some of them were sold at a profit of $1,773.75, leaving a net loss of $2,170.59.

All of the interest on the said bonds was annually paid to the said daughter. No part thereof, and no other income, was accumulated in a sinking fund to make up the said loss thereon. The said daughter died in 1903 leaving the plaintiff and the defendant Rollin H. Lynde her only children or descendants. The plaintiff brings this action against her executors to recover his one-half of the said loss.

In 1899 the trustees accounted, and this plaintiff objected to the account, which showed the above losses, on the ground that all of the income should not have been paid to the life beneficiary, but that enough should have been withheld by the trustees to create a fund to make up the impairment of the principal represented by the said losses. He afterwards withdrew his objections on the understanding of all concerned that it should in no way impair his right to recover of the said life beneficiary or her estate his share as remainderman of such loss of principal, and this was fully expressed in the Surrogate's decree settling the accounts, and the trustees were not charged with the said losses.

On the final accounting after the said life beneficiary's death the plaintiff filed no objections and the accounts were settled without charging the trustees or any one with such losses. Between the two accountings there was no loss of principal; it all occurred before the first accounting.

The principal of the trust estate had to be kept unimpaired for the remaindermen, unless there is something in the will itself, or in default thereof, in the surrounding facts de hors, from which, consistently with the language of the will, a contrary intention of the testator may be found as a fact. If such intention be not found, then it was the duty of the trustees to keep back each year out of the income from the securities purchased by them at a premium, a sum sufficient to make

up for the gradual depreciation of such premium as the said bonds approached maturity, instead of paying the entire income to the life beneficiary; to the end that upon her death the principal should be unimpaired for the remaindermen. Life Ins. Co. v. Baker, 165 N. Y. 484, 59 N. E. 257, 53 L. R. A. 544; Matter of Hoyt, 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126.

There is nothing to go by in this case in ascertaining such intention of the testator except the will itself, no extrinsic facts being proved. The language of the will is of the ordinary tenor for the investment of funds and the receipt and payment of the income therefrom by trustees to the beneficiary, and leaves no room to find as a fact upon it alone that the testator had any intention of changing the rule of law that the principal must be preserved unimpaired for the remaindermen. If the rule above stated of keeping the principal unimpaired may be departed from in this case it may be departed from in every case, unless the will expressly prohibit it.

If the will had directed that the interest on the securities in which the trust estate is directed to be invested should be paid to the life beneficiary, then by the plain words of the will all of such interest would have belonged to her. But the will did not so direct; it directed that "the interest, income and profit of such share"; i. e., the share of the estate put in trust for her, be paid to her. The funds of such share invested by the trustee in government bonds purchased at a premium did not produce net the interest paid on the said bonds, but only the said interest less the annual depreciation in the premium thereon. The payment of the premium in the purchase was in fact a division of the interest between buyer and seller. This is a thing well understood by investors in securities, and the net income on such an investment is arrived at by an established calculation.

The case of McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230, is not applicable to the present case, for the bonds there considered were not purchased by the trustees, but were received by them in kind from the testator. They were in the same category as any other property of the testator, real or personal, which might fall in market value. The rule which we are discussing applies, as I understand it, only to investments made by trustees, and I therefore do not altogether understand how the discussion arose in the McLouth Case. The opinion even there, however, is careful to point out (page 192 of 154 N. Y., page 550 of 48 N. E. [39 L. R. A. 230]) that the life beneficiary would be charged with the depreciation in premium in the case of investments by the trustees when he would not be in the case of investments by the testator.

The plaintiff had the right to elect to hold the life beneficiary liable for the excess of income paid her, instead of the trustees (Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479), and he did so on the first accounting of the trustees. On the last accounting, viz., after the death of the life beneficiary, he made no objection to the overpayment, and the accounts were settled without charging the trustees or any one therewith. But this is not res adjudicata of the question now here, for the reason, if no other, that between the first and second accountings there was no

impairment of principal. It all occurred before the first accounting, and the election of the plaintiff was made and his rights fixed thereon.

But the plaintiff cannot recover anything for the depreciation of the market value of the bonds owned by the testator in his lifetime, and turned over to this trust in kind in the division of the whole estate into the several trusts created by the will. The will did not mention any specific amount to go into each or any trust; it only directed a division of the estate into the several trusts; and the value or amount of the principal of this trust was not fixed by a money standard, but depended on the value of these bonds as they rose or fell. They do not stand in the same case as money of the estate invested by the trustees, as has already been pointed out.

The judgment should be reversed.