WILLIAM A. CURTIS, TRUSTEE, *vs.* HARRIET E.
OSBORN ET-ALS.

Third Judicial District, New Haven, January Term, 1907.

BALDWIN, HAMERSLEY, HALL, PRENTICE and REED, Js.

Having specifically bequeathed his wearing apparel, household furni-
ture, books, watch and personal ornaments, appraised at $1,000,
a testator gave the residue of his estate, consisting of land worth
$8,000, and stocks, bonds, and savings-bank deposits worth about
$280,000, to his executors in trust, directing them to convert "all
my real estate and all my personal property into money, as soon
as in their judgment the same can be done without loss," and to
invest the proceeds in such securities as were legal investments
for savings-banks. The net income of this residue was to be paid
over to certain persons during life, and the remainder was dis-
posed of by the testator in fee, although some of these remainders
were contingent. The stocks and bonds owned by the testator
at his decease were excellent investments and paid a high rate
of interest, but most of them were not such as savings-banks
could lawfully purchase. *Held:*—

1. That the duty of the trustee to convert these stocks and bonds into
trust-fund investments was absolute and imperative; it evi-
dently being the prime object of the testator to strengthen the
security of the capital of the trust fund.

2. That the "loss" which the trustee was to avoid, if possible, in mak-
ing reinvestments, was a loss of principal and not of income.

General Statutes, § 255, permitting trustees to retain securities re-
ceived as part of the trust fund, though not such as are a legal
investment for trust funds, has no application where the instru-
ment creating the trust directs a change in investments.

For several years the trustee retained the securities left by the testator,
and his accounts, showing that fact, had been accepted after legal
notice and hearing, and without appeal. *Held* that this did not
justify the trustee in disregarding the requirements of the will in
his future action, to the prejudice of the remaindermen.

The trustee bought for $11,300 certain bonds of the face value of
$10,000, having six years to run, and annually paid the entire
interest to the life tenants. *Held* that on maturity and payment
of the bonds the $1,300 loss of premium must be charged to
income.

Whether the trustee ought not to have retained, yearly, from the
interest of these bonds enough to produce the $1,300 at maturity,
*quære.*

The trust owned stock in a bank which was consolidated with another bank to form a new corporation, under an agreement by which the assets of each should be liquidated, and any surplus held by one in excess of that held by the other should be refunded to its own stockholders, and the old corporations should then be dissolved. Under this agreement a certain sum was distributed to the shares held by the trust. *Held* that this sum, being the proceeds of liquidation, went to principal and not to income.

Argued January 15th—decided March 6th, 1907.

SUIT by a testamentary trustee for the construction of a will, brought to and reserved by the Superior Court in Fairfield County, *Shumway, J.*, for the advice of this court.

*Asa B. Woodward*, for the plaintiff.

*Levi Warner*, with whom was *Howard H. Knapp*, for Harriet E. and Clarence F. Osborn.

*J. Belden Hurlbutt*, for Charles E. Miller, administrator.

*Robert E. DeForest*, for Dwight J. Osborn.

BALDWIN, C. J. Charles F. Osborn (who was not a lawyer), in the will in question, which is wholly in his own handwriting, after giving several legacies amounting in all to less than $2,500, proceeded as follows:—

" Sixth. All the rest, residue and remainder of my estate of every kind owned by me at my decease, I give, devise and bequeath to my executors hereinafter named, to hold the same as trustees, for the uses and purposes following : ' That is to say,' First to convert all my real estate and all my personal property into money, as soon as in their judgment the same can be done without loss, and to invest said trust fund either in loans on bonds or notes, each of which must be secured by first mortgage on real estate situated in the State of Connecticut or in the City or County of New York, unincumbered and equal in value to double the amount of the loan secured thereon, or in and of the stocks, bonds or public securities which savings banks are

or by law may be required to invest their deposits, at their discretion, and such investments from time to time to change, whether made by me or them, so long as said trust shall continue and the income of said trust fund to receive and use as follows."

The will then provides that the net income received shall be paid to certain members of the testator's immediate family during their lives, and that upon their deaths the fund shall go to certain of his descendants, with a contingent remainder in favor of certain charities and remoter relations. His wife and one George E. Miller were appointed executors and trustees, and there is a provision that " the executors and trustees under this will, are hereby given full power and authority to sell and convey any and all real estate owned by me at my decease, at such times and in such manner as they shall deem best."

Six years after the date of the will he died. His widow declining to act, Mr. Miller qualified as sole executor and trustee, and in the latter capacity received as the residue of the estate property of about $295,000 in value, of which $8,000 was in real estate and nearly as much in cash. The testator left movable property of a tangible nature, as distinguished from moneys, credits, and income-producing investments, worth $1,000, but this was all specifically given by an early clause of the will to his wife. The trustee received stocks, bonds, and savings-bank deposits to the value of nearly $280,000.

Mr. Miller has since died, and the plaintiff is his successor in the trust. All of the cash and part of the savings-bank deposits were used by the trustee in paying the income due to the life tenants, accruing after the decease of the testator.

The following facts are specially found : The testator was a man of much experience and of unusual sagacity in making investments, and his investments held at his decease were of an exceptionally judicious character. None of them were loans on mortgage of real estate, and most of them were not such as are authorized by law as savings-

bank investments. He habitually made purchases of stocks and securities as permanent investments, and not for purposes of speculation or trade. His investments have not been changed by the successive trustees, except so far as in individual cases it has become necessary or seemed advisable, and the present market value thereof as a whole is much greater than it was at the testator's death. The real estate has been sold and the proceeds invested according to said will. The securities and investments held by the trustee, or most of them, can probably be sold at good prices and without actual loss, except as hereinafter set forth, but the proceeds could not be invested as directed in paragraph sixth of the will without a probable diminution of income, a loss of income during the period required for finding and making suitable investments, and considerable incidental expenses. The items or blocks of stocks and bonds now held by the trustee, besides savings-bank deposits and loans made by him and his predecessor, are thirty or more in number. It would be difficult and expensive to reinvest the proceeds, as a whole, as satisfactorily or judiciously, having regard to productiveness of income as well as to a reasonable and prudent safety of principal, as the funds have been invested in the present holdings.

It is contended by the life tenants that the "personal property" which was to be turned into money under the terms of the sixth clause of the will was that only of a tangible nature as distinguished from income-producing investments. The language of the testator is plain, and excludes any such construction. The first duty which he enjoins on his trustees is to convert all his real and personal property into money as soon as they may judge that this can be done without loss. "All" is a term that needs no explanation, and leaves no room for conjecture. While subsequently the trustees are given a wider discretion as to the time for selling his real estate, there is no similar provision as to the personal estate, unless one can be implied from the trust to change investments belonging to the fund

from time to time, " whether made by me or them." This indicates an intent to leave the trustees free to retain any investments coming into their hands that were made by him in securities of the same character as those in which they were required to reinvest the proceeds of sales, but as to all other personal estate received by them as part of the trust fund, the duty òf conversion, as soon as they should be of opinion that it could be done without loss, was absolute and imperative.

There is nothing which can explain away the force of the testator's precise directions in the fact that he was a judicious investor, and had put the property into securities yielding a greater income than could be reasonably antici- pated from investments of the kind required in the will. His first object evidently was to strengthen the security of the capital of the trust fund ; and such an investor as he is found to have been must have contemplated a consequent reduction of the annual revenue as probable, if not certain. The " loss " to which he refers in his direction to sell is a loss of capital and not of income.

General Statutes, § 255, permits trustees to retain secu- rities received as part of the trust fund, though not of a kind ordinarily suitable for trust investments, when not otherwise ordered by the Court of Probate, "unless the in- strument under which said trust was created shall direct that a change of investment shall be made." The will now in question does so direct as to all securities not of the kind specified by the testator as those in which he required his trustee to reinvest.

That the conversion required has not been made, and that the successive trustees have annually filed in the Court of Probate full accounts of their doings, which have been approved by the court after notice by publication to all in interest, and actual notice to the life tenants, is no reason why the testator's explicit directions should not now be obeyed by proceeding to a conversion as soon as it can reasonably be effected without loss to the principal of the fund. Whatever effect might be given to the fact that

none of the beneficiaries under the will have appealed from the allowance of these accounts, it certainly could not justify the trustee in disregarding the will by future action or inaction to the prejudice of the remaindermen, and who these will be depends upon future contingencies.

In 1899 the then trustee under the will bought certain bonds of the City of South Bend, coming within one of the classes of securities in which savings-banks are required by law to invest. They bore six per cent interest, were of the par value of $10,000, and cost him $11,300 and the interest accrued since the last preceding interest payment. The life tenants were thereafter, until the year 1905, paid the full interest collected on the bonds (less the amount of accrued interest advanced at the time of the purchase). The bonds having been paid off, on maturity, the plaintiff reserved $1,300 out of the income of the fund received in 1905, and asks whether it should go to the life tenants or be treated as capital.

The investment made in 1899 was necessarily of the kind known as a wasting one. See *Second Universalist Church* v. *Colegrove,* 74 Conn. 79, 83, 49 Atl. 902. The amount paid, $11,300, was for a block of bonds by which the borrower promised to pay the principal sum of $10,000 after a certain sum of years, and an annual sum by way of interest of $600 during that term. The $600 annually received by the trustee was the fruit of his payment from the trust fund of $11,300. It was, in its relation to the City of South Bend, the interest on $10,000, but in its relation to the trust fund it was in the nature of the interest on an investment of $11,300, which was certain to dwindle in six years to $10,000.

It would have been proper for the trustee to have paid to the life tenants annually out of this $600 such sum only as would leave a balance which, when properly invested year by year, would have amounted to $1,300 at the maturity of the bonds. As he has paid them each year the entire $600, the $1,300 which he has now reserved from the income in his hands should be treated as a part of the

principal of the trust fund; thus attaining the same result (both the life tenants being still living) as if he had made an annual deduction to raise the same aggregate amount for the same purpose. The facts in the case at bar do not require us to decide whether the trustees failed in duty in not making such annual deductions. See *New England Trust Co.* v. *Eaton*, 140 Mass. 532, 4 N. E. 69; *New York L. I. & T. Co.* v. *Baker*, 165 N. Y. 484, 59 N. E. 257. It is, for the purposes of this proceeding, enough to determine that the $1,300 now held as a fund reserved from the income belongs to the principal.

Part of the assets originally received by the trustee, on the settlement of the testator's estate, consisted of shares of stock in corporations, which have since increased their capitals and given each shareholder the privilege of taking his proportion of new capital by subscribing for new stock, or obligations ultimately convertible into stock. In such cases the trustees have made such subscriptions, with the consent of the Court of Probate, obtained conformably to General Statutes, § 376.

The shares obtained by such subscriptions stand upon the same footing as those originally received, with respect to the duty of conversion and reinvestment.

Twenty shares in the National Citizens Bank of New York were received as part of the original trust fund. This bank has since been consolidated with another, to constitute a new banking corporation, under an agreement that the assets of each of the former should be liquidated separately; that the surplus of the new bank should be made up from the surplus assets of the others, in the proportion of their respective capitals; and that after thus ascertaining what the bank having the smaller percentage of surplus would contribute, the excess above such proportionate contribution remaining from the assets of the other bank should be distributed *pro rata* among those who were its shareholders at the date of the consolidation. The liquidation of the assets of the National Citizens Bank showed its percentage of surplus to be greater than that of the

other bank, and there was consequently distributed to the plaintiff $25 on account of each of his twenty shares.

The consolidation put an end to the two constituent corporations. This $500, being the fruits of a liquidation, on the final winding up of the Citizens National Bank, is therefore part of the principal of the trust fund. *Second Universalist Church* v. *Colegrove*, 74 Conn. 79, 83, 49 Atl. 902 ; *Bulkeley* v. *Worthington Ecclesiastical Society*, 78 Conn. 526, 531, 63 Atl. 351.

The Superior Court is advised to enter a judgment in conformity with this opinion.

No costs will be taxed in this court for or against any party.

In this opinion the other judges concurred.