THE CONNECTICUT TRUST AND SAFE DEPOSIT COM-
PANY, TRUSTEE, APPEAL FROM PROBATE.

Third Judicial District, New Haven, January Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A testamentary trustee is not entitled to withhold a part of the income
from the life tenant thereof, in order to create a sinking fund to
replace the loss caused by the gradual depreciation of the premium
on bonds left by the testator and properly retained by the trustee
as part of the trust fund, unless, indeed, it appears from the
language of the will that the testator intended that such deduc-
tion should be made.

The terms of the will in the present case reviewed and *held* not to jus-
tify the trustee in making such deduction.

Argued January 21st—decided April 14th, 1908.

APPEAL from a decree of the Court of Probate for the
district of Stamford, refusing to allow a testamentary trus-
tee to credit its account with a sinking fund for retiring
premiums on bonds purchased by the testator, brought to
and reserved by the Superior Court in Fairfield County,
*Roraback, J.*, upon an agreed statement of facts, for the
advice of this court. *Superior Court advised to render
judgment affirming the order of the Court of Probate.*

*John T. Robinson*, for the Connecticut Trust and Safe
Deposit Company, Trustee.

*J. Lincoln Fenn*, for Gladys de W. Cooke.

*Hedley V. Cooke* of New York, for Howard de Walden
Cooke.

*Jacob B. Burnet* of New York, for Samuel W. Cooke
*et al.*

HALL, J. Samuel Cooke of Stamford died in October,
1903, leaving a will executed in 1893, with a codicil thereto
made in 1900, and an estate consisting of his place of resi-
dence, inventoried at $35,000, money in bank to the amount

of over $2,000, horses, carriages, furniture and other mis-. cellaneous chattels to the amount of $10,000, and a large amount of railroad mortgage bonds, some of which commanded a premium above their face value, and the market value of others of which was less than their face value.

There survived the testator, as his only next of kin, his son, Howard de Walden Cooke, Gladys de W. Cooke, a. daughter of said Howard, and Samuel W. Cooke and Emma Walden McTurk, stepchildren of said Howard, being children of his deceased wife and his deceased brother, and grandchildren of the testator. These are the only living. descendants of the testator.

By the second clause of his will the testator gave to his son, Howard, the money in bank, household furniture and other miscellaneous chattels, and his place of residence above referred to.

By the third clause he gave to his executor, the trustee, the rest, residue and remainder of his estate, upon the following trust: " To have and to hold the same and to. receive the income thereof, as trustee, during the lives of my son, Howard de Walton Cooke, his wife, Fannie G. Cooke, and any and all of my grandchildren living at the time of my death and the longest survivor among said lives, and to pay over the income thereof as follows: to pay, deduct and retain as much as shall be required to pay all taxes and other charges that may from time to time be levied, imposed or assessed upon said trust property or the income thereof; to pay therefrom all the expenses of managing, protecting, insuring, investing and collecting said trust property or the income thereof, and to pay over the net income thereof to my said son, Howard de Walden Cooke, during his life, in quarter yearly payments."

The fourth clause requires the trustee, upon the death of Howard, to pay the net income to the testator's grandchildren and to the issue of such as have deceased, with an annuity from such income to the widow of said Howard equal to the share of each grandchild, and proceeds as follows: " and at the expiration of the term of said trust

to pay over the principal of said trust to my grandchildren and to the issue of such of said grandchildren as have deceased. It is my intention by the above provisions of my will to vest my entire residuary estate in my grandchildren as a class, subject only to the trusts hereinbefore provided. The payments of income above mentioned are not to be subject to anticipation."

The sixth clause authorizes the trustee to retain the existing investments of the estate at the time of the death of the testator; to invest any money which it may receive in certain described securities; and to change such investments from time to time as the trustee may deem it advisable; and provides that the trustee shall not be held accountable for the sufficiency of the investments it may make.

The codicil gives the testator's son, Howard, the power to apportion and appoint by will the said net income among said grandchildren and the issue of any deceased grandchildren, according to his discretion and in such proportions as he may see fit.

In June, 1904, the executor filed its preliminary account, without making any provision to offset the future wasting in value of said securities which were at a premium.

In October, 1904, the executor filed his final account, which contained these items in the schedule of assets:—

| | |
|---|---|
| Value of bonds based on inventory . | $387,100.00 |
| Deduct on account of value of bonds (being amount of sinking fund set aside for the year ending Oct. 28, 1904, for the retirement of premiums) . . . . . . . . . . | 1,484.26 |
| Estimated net value of bonds . . . | $385,615.74 |
| Add sinking fund, consisting of cash . . . . . . . . . . | 1,484.26 |
| | 387,100.00 |

| | |
|---|---|
| Amount brought forward . . . . . | $387,100.00 |
| Cash . . . . . . . . . . . . | 169.15 |
| | $387,269.15 |

The item of $1,484.26 was arrived at by dividing the premiums upon each bond, as shown by the inventory, above its face value, by the number of years it has to run from the death of the testator to its maturity, and adding semi-annually one half the sum so arrived at to the said sinking fund.

The first trustee account, filed in January, 1906, showed a further "transfer to sinking fund for retiring premiums on bonds," of $1,484.26.

In the second trustee account, filed in January, 1907, the trustee charged itself with

| | |
|---|---|
| Amount received from executor . . . | $387,269.15 |
| Balance on hand. . . . . . . . . | 2,998.27 |
| Income received. . . . . . . . . | 17,964.00 |
| | $408,231.42 |

And credits itself with

| | |
|---|---|
| Amount of investments on hand. . . | $387,269.15 |
| Amount of income paid H. de W. Cooke. | 14,475.48 |
| Taxes, probate fees, and commission. . | 1,910.90 |
| Balance of income on hand. . . . . | 3,091.63 |
| Transfer to sinking fund for retiring premiums on bonds. . . . | 1,484.26 |
| | $408,231.42 |

Upon the hearing upon the allowance of this account, before the Court of Probate, said Howard de Walden Cooke objected to the allowance of said credit item of $1,484.26 for retiring premiums on bonds, and to the similar item in each of the two preceding accounts, upon the ground that said three items should be stated as income on hand belonging to said life tenant. The Court of Pro-

bate sustained his objection and disallowed said item as to said last account, but overruled it as to the two preceding accounts upon the ground that the life tenant was concluded by the previous orders of the court accepting said two accounts.

From the order of the court disallowing said item of $1,484.26, and requiring that amount to be added to the credit item of balance of income on hand, the trustee appealed to the Superior Court, which reserved the case for the advice of this court.

The question as stated in the reservation, is " whether or not there is a legal duty upon the trustee to provide from the interest received upon the bonds held in the trust fund a sinking fund against the retiring premiums upon said bonds."

As supporting its contention that it was the duty of the trustee to set aside a fund for said purpose from the income of the bonds, the trustee cites the case of *Curtis* v. *Osborn*, 79 Conn. 555, 65 Atl. 968, in which we held that it would have been proper for a testamentary trustee, who with the trust funds had purchased certain bonds at a premium, to have paid to the life tenants, annually, from the income, such sum only as would have left a balance, which, when properly invested, year by year, would have equaled the premium at the maturity of the bonds.

But the question presented by the case at bar is essentially different from that decided in *Curtis* v. *Osborn.* There the trustee, upon his own responsibility, paid from the principal of the trust funds $11,300 for bonds for which it was certain he would receive no more than $10,000 at their maturity. Unless the trustee had charged to the income the amount of the premium paid, the remaindermen would, at the termination of the life estates, have received $1,300 less than the sum which by the terms of the will the testator clearly intended they should then receive. Here the trustee has merely retained the securities purchased by the testator and transmitted to the trustee as a part of the estate. The testator not only did not

direct them to be sold, but expressly authorized the trustee to retain them. The provisions of the will regarding the deductions to be made from the income, and the payment of the net income to the life tenants, are therefore to be read as if made with reference to a retention of these investments by the trustee. When so read, and when the other provisions of the will, the relations of the several beneficiaries to each other and to the testator, and all the relevant facts are considered, we fail to discover any intention of the testator that a deduction should be made from the income to meet the depreciation of the premium resulting from the approaching maturity of the bonds. While no rule should be adopted respecting the duty of a testamentary trustee in the disposition, as between life tenants and remaindermen, of the income from premium bonds received from the testator's estate, which will not yield to the intention of the testator when discoverable from proper sources, it may be stated as a general proposition supported by both reason and authority, that when a testamentary trustee receives bonds from the estate of a testator as part of a fund or property, the interest or income of which he is to pay to life tenants, with remainder over, and which, either by authority of the will or by law, he may properly retain as a part of the trust estate, and such bonds, either at the time of, or after, the testator's death, are at a premium, it is the duty of the trustee to pay the entire income to the life tenants, without any deduction to meet depreciation of premium, unless a different intention of the testator may properly be gathered from the language of the will. *Hemenway* v. *Hemenway*, 134 Mass. 446 ; *Shaw* v. *Cordis*, 143 id. 443, 9 N. E. 794 ; *McLouth* v. *Hunt*, 154 N. Y. 179, 48 N. E. 548 ; *Matter of Stevens*, 187 N. Y. 471, 80 N. E. 358.

Under the rule as above stated the Court of Probate properly disallowed the credit item of $1,484.26 in the trustee's account of January, 1907.

As this is an appeal by the trustee only, we do not consider the rulings of the Court of Probate adverse to the

life tenant, concerning credits allowed in accounts previous to 1907 for sums reserved to cover loss of premiums.

The Superior Court is advised to render judgment affirming the order of the Court of Probate appealed from.

In this opinion the other judges concurred.