In the Matter of the Accounting of FREDERICK H. STEVENS et al., as Trustees under the Will of JULIA A. BROOKS, Deceased.

JESSE B. NICHOLS et al., Appellants ; FREDERICK H. STEVENS et al., as Trustees et al., Respondents.

TRUSTS — WHEN TESTAMENTARY FUND INVESTED IN SECURITIES AT A PREMIUM MUST BE KEPT INTACT BY DEDUCTION OF INTEREST. Where trust funds are invested by a testamentary trustee in bonds having a term of years to run and purchased at a premium, in the absence of a clear direction in the will to the contrary, such a proportionate deduction should be made from the nominal interest as will, at the maturity of the bonds, make good the premiums paid and thus preserve the principal of the fund intact; a surrogate's decree, therefore, in a proceeding settling the trustee's accounts awarding to a life tenant as income the whole amount of the interest coupons is erroneous.

*Matter of Stevens*, 111 App. Div. 773, modified.

(Argued January 7, 1907; decided February 26, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 7, 1906, which affirmed a decree of the Chautauqua County Surrogate's Court settling the accounts of the trustees herein.

The facts, so far as material, are stated in the opinion.

*Clare A. Pickard* for Jesse B. Nichols, appellant. The fair and reasonable construction of the language of this will

—the language which expresses the intention of the testatrix
— demands that all earnings of the stock embraced in the
trust as fast as it is released from its corporate control, shall
be paid over to the life tenant as "dividends, issues and
profits." (*Thorn* v. *De Breteuil*, 179 N. Y. 64; *Haskall* v.
*King*, 162 N. Y. 134; *McLouth* v. *Hunt*, 154 N. Y. 179;
*Lowry* v. *F. L. & T. Co.*, 172 N. Y. 137.)

*John Ewen* for Jessie V. Tyler, appellant. Unless a con-
trary intention can be inferred from the language of the trust
instrument in connection with the surrounding circumstances,
deductions should be made annually from the interest received
on trust securities to cover depreciation in their value caused
by the wearing away of premiums paid at the time of their
purchase. (*N. Y. L. Ins. & T. Co.* v. *Baker*, 38 App. Div.
417; 165 N. Y. 484; *N. Y. L. Ins. Co.* v. *Kane*, 17 App.
Div. 542; *People ex rel. Cornell* v. *Davenport*, 30 Hun, 177;
117 N. Y. 549; *McLouth* v. *Hunt*, 154 N. Y. 179; *Matter
of Hoyt*, 160 N. Y. 607; *Lynde* v. *Lynde*, 113 App. Div. 411.)

*George A. Lewis* for trustees, respondents. The entire pro-
ceeds of the sale on June 20, 1901, of the business, plant, mate-
rials or other property, tangible or intangible, of the Brooks-
Locomotive Works to the American Locomotive Company
represent principal and not income to the stockholders of the
Brooks Locomotive Works. (*Matter of Kernochan*, 104
N. Y. 618; *Thorn* v. *De Breteuil*, 86 App. Div. 405; 179
N. Y. 64; *Matter of Nesmith*, 140 N. Y. 609; *Matter of
Proctor*, 85 Hun, 572; *Matter of Gerry*, 103 N. Y. 445;
*Stewart* v. *Phelps*, 71 App. Div. 91; *Matter of Curtis*, 29
N. Y. S. R. 217; *Matter of Skillman*, 24 Abb. [N. C.], 41;
9 Am. & Eng. Ency. of Law [2d ed.], 717–719; *Matter of
Roberts*, 40 Misc. Rep. 512; *People ex rel.* v. *Roberts*, 159
N. Y. 70.) In view of the provisions of the will of the testa-
trix, and the situation of her legatees and the beneficiaries and
remaindermen under the trusts created by said will, it is not
the duty of the trustees to maintain a sinking fund for the

extinguishment of premiums paid upon bond purchases. (*McLouth* v. *Hunt*, 154 N. Y. 179; *Matter of Hoyt*, 160 N. Y. 607; *N. Y. L. Ins. & T. Co.* v. *Baker*, 165 N. Y. 484; *Matter of Johnson*, 57 App. Div. 494.)

*John Ewen* for Jessie V. Tyler, respondent. It was the intention of the testatrix that the trust fund should be kept intact until the life beneficiaries should severally arrive at the age of thirty years, and the dividends representing the price received upon the sale of the business of the Brooks Locomotive Works are not income within the meaning of the will. (*Lowry* v. *F. L. & T. Co.*, 172 N. Y. 143; *Kiah* v. *Grenier*, 56 N. Y. 220; *Van Nostrand* v. *Moore*, 52 N. Y. 21.) When a corporation in whose stock trust funds have been invested goes into liquidation and distributes all of its property in the shape of dividends, those dividends paid to the trustees from so much of its assets as were used in its business at the time it ceased operations, should, in the absence of a contrary intention expressed in the trust instrument, be held as principal of the trust fund. (*Lowry* v. *F. L. & T. Co.*, 172 N. Y. 142; *McLouth* v. *Hunt*, 154 N. Y. 179; *Matter of Kernochan*, 104 N. Y. 618; *Gibbons* v. *Mahon*, 136 U. S. 549; *Stewart* v. *Phelps*, 71 App. Div. 91; 173 N. Y. 621; *Matter of Rogers*, 22 App. Div. 428; 161 N. Y. 108; *Matter of James*, 146 N. Y. 78.)

CULLEN, Ch. J. The decree of the surrogate, from the affirmance of which by the Appellate Division this appeal is taken, judicially settles the accounts of the executors and trustees of the will of Julia A. Brooks. The controversy relates to the respective rights of life tenants and remaindermen in property, the subject of the trust under the said will. The testatrix created separate trusts for her five grandchildren, exactly alike in character. In each of these trusts she bequeathed to her executors 247 shares of Brooks Locomotive Works in trust, to receive the dividends, issues and profits thereof and apply the same to the use of the grandchild until

he became of the age of thirty years, at which time she gave the principal of the trust fund to said child absolutely. In case of the death of the grandchild without issue before arriving at the age of thirty years, then the fund was to go to the testatrix's surviving children and grandchildren. Though the probability is that the appellant Jesse Brooks Nichols will ultimately prove to be the remainderman in this fund, still, on account of the contingency that he may not survive until the age of thirty years, the questions involved must be determined on the ordinary principles which prevail between life tenants and remaindermen. The testatrix died November 30th, 1896. Even then the Brooks Locomotive Works was a very successful manufacturing corporation. From the time of the testatrix's death until June 20th, 1901, when the whole plant and properties were sold to the American Locomotive Company, its success was phenomenal. Owing to this fact and to the consolidation of the various interests and companies engaged in the manufacture of locomotives, the Brooks Company, on the sale of its plant and property, received a price several times its estimated value at the time of the decease of the testatrix. It is the distribution of this enhanced value between income and principal of the trust fund which has given rise to the principal questions involved in the present controversy. A majority of the court are of opinion (in which, personally, I do not share) that under the findings of the surrogate and the unanimous affirmance by the Appellate Division, the apportionment made by the surrogate of the funds and properties received by the executor on the dissolution of the Brooks Company cannot be disturbed. We all agree, however, that the principal amount in controversy, a very large sum, received for good will on the sale of the works, cannot be deemed income, but was properly awarded to principal of the trust as an appreciation in the value of the *corpus*. As this court has, within a few years, several times written at length on the general subject, we deem it unnecessary to do more than state our conclusion, and should affirm the decree below without opinion were it not that there is

also presented by the appeal a question involving an amount small compared to the large fund which is the subject of these trusts, but which frequently arises in the administration of estates.

The trustees have invested large portions of the fund, which came into their hands on the dissolution of the Brooks Company, in bonds purchased at a premium. The appellant Tyler contended before the surrogate that from the interest collected on those bonds there should be deducted, as it was collected, a sum sufficient to make good at the maturity of the bonds the amount paid as a premium. The surrogate overruled this claim and awarded the whole amount of the interest coupons to the life tenant as income. This disposition was erroneous and is in conflict with the recent decision of this court in *New York Life Ins. & Trust Co.* v. *Baker* (165 N. Y. 484). It was there held that where trust funds are invested by the trustee in bonds having a term of years to run and purchased at a premium, such a proportionate deduction should be made from the nominal interest as will, at the maturity of the bonds, make good the premium paid, and thus preserve the principal of the fund intact. It is true that in that case the late chief judge of this court said that the language of the will and the surrounding circumstances might indicate a different intention on the part of the founder of the trusts, in which case the testator's intent would control. Such was the case in *Matter of Hoyt* (160 N. Y. 607), where a testator left as a trust fund for his daughter and only child a comparatively small share of a vast fortune and directed the income to be applied to her use "in the most bounteous and liberal manner." It was held by a divided court that the life tenant should not be charged with any part of the premium paid for the security in which the trust fund was invested. In the earlier case of *McLouth* v. *Hunt* (154 N. Y. 179) it was held that the life tenant should not be charged with premium on bonds received in kind from the estate of the testator. But as to investments made by the trustees it was

said : " There were $5,000 of the United States bonds purchased by the trustees after the erection of the trusts at the same premium. There may be reasons for charging the life tenants with the premium on these bonds that do not apply to the others. But that item is so insignificant that it does not play any part in the controversy. All questions as to the premiums on these bonds were virtually waived on the argument." While we admit, in accordance with the decision in *Matter of Hoyt*, that the terms of the will may be such as to take a case without the general rule that the principal of the fund must be preserved intact, we think that to justify such an exception to the rule the intent should be expressed in the very clearest manner. If we are to lay down the doctrine that the question is to be determined on the peculiar facts and language of each particular case, no trustee will know how to safely act, and a question constantly arising in the administration of estates will be involved in great confusion and be the cause of great litigation, the latter often at an expense to the estate greater than the sum involved. Such a result would prove very unfortunate.

The justification for the rule is very apparent. The income on a bond having a term of years to run and purchased at a premium is not the sum paid annually on its interest coupons. The interest on a $1,000 ten-year five per cent bond, bought at 120%, is not fifty dollars, but a part thereof only, and the remainder is a return of the principal. All large investors in bonds, such as banks, trust companies and insurance companies, purchase bonds on the basis of the interest the bonds actually return, not the amount they nominally return. Nor is the premium paid on the bond an outlay for the security of the principal. All government bonds have the same security, the faith of the government; yet they vary in price, a variation caused by the difference in the rate of interest and the time they have to run. It is urged that there is often a speculative change in the market value of a bond, and a bond may be worth more at the termination of the trust than at the time of its purchase. This has no bearing on the

case. The life tenant should neither be credited with an appreciation nor charged with a loss in the mere market value of the bond. But apart from any speculative change in the market value, there is from lapse of time an inherent and intrinsic change in the value of the security itself as it approaches maturity. It is this, and this only, with which the life tenant is to be charged. We, therefore, adhere to the rule declared in the *Baker* case, that in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact · from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the *McLouth* case prevails, and the whole interest should be treated as income. These rules may not work perfect justice in all cases, and we fully appreciate that there may be inconsistencies between them, but it is far better that they should be uniformly adhered to, even at the expense of a particular case, than that the administration of estates should be subjected to constant litigation and disputes. It is also to be said that unless the rule in the *Baker* case is to be observed, the relative rights of life· tenant and remainderman would largely depend on the favor or caprice of the trustee who might either buy a bond bearing a high rate of interest at a great premium and impair the principal, or buy a bond bearing a lower rate of interest substantially at par, and preserve the principal intact.

The order of the Appellate Division and the decree of the surrogate of Chautauqua county should be modified in accordance with this opinion, and for that purpose the proceedings remitted to the surrogate to state the account, with costs to both parties payable out of the estate.

EDWARD T. BARTLETT, J. (dissenting). I am unable to agree with the conclusion reached by the chief judge that where investments are made by the trustee the principal must be maintained intact from loss occasioned by payment of premium on securities having only a definite term to run. Nor

can I agree that the laying down of such a hard and fast rule is supported by *New York Life Ins. & Trust Co.* v. *Baker* (165 N. Y. 484), and is not in conflict with *McLouth* v. *Hunt* (154 N. Y. 179) and *Matter of Hoyt* (160 N. Y. 607). It is true that in the *McLouth* case the greater portion of the securities held by the trustees in trust were purchased by the testator in his lifetime. In the *Hoyt* case the trustees were authorized to set apart in the trust fund any of the securities held by the testator, but decided not to do so, and invested $1,250,000 of the trust in government four per cent bonds and railroad bonds at a high premium. The result was that this premium reached twenty-nine per cent for the government bonds and thirty-three and one-half per cent for some of the railroad bonds, so that nearly $245,000 was absorbed by the premium. If a hard and fast rule is to be laid down for the government of trustees, there is, in my opinion, no well-grounded distinction between securities passing into the trust from the general estate of a testator and those purchased by trustees in the exercise of their power under the will.

In the *McLouth Case* (*supra*) two questions were presented : (1) As between life tenant and remainderman, who should bear the loss by the wearing away of premiums ; (2) whether a stock dividend was income or capital. The latter question is not involved in this discussion. It was amid great conflict of authority in England and this country that the *McLouth* case was carefully considered and decided by a unanimous court. Judge O'Brien, writing for the court, said (p. 189) : "Notwithstanding the conflict of authority to which I have just referred, there is one principle or rule applicable to this case, with respect to which the parties are all at agreement, and that is that the questions are not to be determined by any arbitrary rule, but by ascertaining when that can 'be done, the meaning and intention of the testatrix, to be derived from the language employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding facts and circumstances of the case." This rule was strictly applied in the *Hoyt Case* (*supra*) and

the *Baker Case* (*supra*). In the *McLouth* case it was held, after examining the will and surrounding circumstances, that a testatrix, in creating a trust, of which her grandchildren were, in effect, made life tenants up to a specified age and then remaindermen, directed that while life tenants they should receive the "full income," it was her intention that they should receive the entire annual interest of the bonds without diminution by the reservation of a portion thereof to meet any depreciation in the market value of the bonds through their approaching maturity, that is, that the premium should not be charged to the life tenant and that this intention of the testatrix was controlling.

In the *Hoyt* case a different situation was presented. The testator, Jesse Hoyt, a well-known millionaire of his day, died leaving about $8,000,000, the entire amount of which he bequeathed to his brothers and their children. The opinion states (p. 613): "For some reason not disclosed by this record, but which we must assume was sufficient, the testator made a very peculiar will so far as his only child and daughter was concerned. By the fourth clause thereof he directed that the sum of $1,250,000 should be appropriated from his estate and held in trust for the use and benefit of his daughter during her life. The trustees were directed to collect and receive the interest, dividends and income therefrom and from each and every part thereof, and to apply to her use, for and during her natural life, in the most bounteous and liberal manner as to expenditure, and so as to promote her convenience and comfort and gratify her reasonable desires." This case was decided not only by considering the language employed by the creation of the trust, but the surrounding circumstances and the relations of the parties to each other, which were peculiar and most persuasive in leading the court to the conclusion that the testator, who left no part of his millions absolutely to his only child and daughter, intended that the trust provision entitled her to the entire income thereof, and, the loss by the wearing away of premiums might well be borne by the remaining millions in the estate which passed to

collaterals. In other words, this case was decided by the application of the broad and reasonable rule laid down in the *McLouth* case, already quoted.

The case of *New York Life Ins. & Trust Co.* v. *Baker* (*supra*) was no departure from the position assumed by this court in the two cases discussed, but followed the rule there established. Parker, Ch. J., in the opinion of the court, cites both the *McLouth* and *Hoyt* cases, and states in full the rule laid down in the former case. The learned judge then says: "In the surrounding facts and circumstances in this case we find nothing that leads us to the conclusion that the testator intended any different treatment of the trust than that which the language of the clause creating it plainly indicates, viz., that the capital of the trust should be kept intact, and to that end an adequate proportion of the annual income should be set apart to make good the amount paid in premiums in order to secure a proper investment."

The case at bar is voluminous and some of its most important questions have already been determined by the vote of this court, with which I agree. We have surviving this single question, whether the life tenant or remainderman in the trusts before us should bear the loss occasioned by the wearing away of premiums. In my opinion the provisions creating the trusts and the facts bearing upon this question lead inevitably to the conclusion that it was the intention of the testatrix that the life tenant should receive the full income of the trust fund. We have here five separate trusts in favor of as many grandchildren of the testatrix. The language of the trusts is identical, save as to name of beneficiary, and provides as follows: "I give and bequeath to my executors hereinafter named two hundred and forty-seven (247) shares of the capital stock of the Brooks Locomotive Works aforesaid, to have and to hold the same in trust nevertheless, to collect and receive the dividends, issues and profits thereof, and to apply the same to the use of my grandson, Jesse Brooks Nichols, in semi-annual payments or as often as the same shall be declared paid or realized, until my said grandson shall

arrive at the age of thirty years." It is then provided that on the happening of said event the shares of stock, with any accumulations or earnings thereon, shall be transferred to the beneficiary. It is also provided that in case the grandson dies before attaining the age of thirty years the stock, etc., shall pass to his issue, and failing in that, to the surviving children and grandchildren of the testatrix, share and share alike.

Reference need be made to only a few of the many facts involved in this voluminous record in order to make clear the intention of the testatrix. In the year 1869 Horatio G. Brooks, the husband of the testatrix, organized the company known as the Brooks Locomotive Works, the plant being located at Dunkirk, Chautauqua county. From that time until his death in 1887 Brooks was the president of the company and its dominating spirit. The capital stock was $250,000, divided into 2,500 shares of the par value of $100 each, and it so remained during the entire existence of the company. The business of the company was the manufacture of railroad locomotives. The corporation passed through various vicissitudes and at times prior to 1886 was barely kept going, the greatest depression occurring in the year 1873; succeeding the panic of that year the business increased and the company became solvent and prosperous before Mr. Brooks' death.

Julia A. Brooks, the testatrix, died November 5th, 1896, owning 1,700 of the 2,500 shares of the capital stock of the company. From 1887 to 1896 the business was exceedingly prosperous. In 1896 there began a new era in locomotive building and the business of the company was very greatly increased. Mrs. Brooks by her last will and testament created the five separate trusts in favor of her grandchildren, to which reference has already been made. The principal of each of these trusts consisted of 247 shares of the company, aggregating for the five trusts 1,235 shares. From the death of the testatrix in 1896 to the sale of the company outright of its business and property to the American Locomotive Company on June 20th, 1901, there was an enormous increase of business and profits,

31

the aggregate dividends during that period amounting to 305 per cent on the capital stock. The net amount of the purchase price, after deducting from the gross sum of $6,626,837.00 certain items, the nature of which is not material at this time, amounted to $4,198,437.00, representing principal. The 1,235 shares, constituting the five trust estates, received of this net amount as increase of capital $2,083,907.88. After the sale there was paid to the stockholders, including the trustees under the will, as accumulated surplus earnings, the sum of $900,000 with the assent of all parties. This payment is expressly found by the surrogate and as a fact stands unanimously affirmed by the Appellate Division.

It thus appears that at the time of testatrix's death in 1896 this era of great prosperity had already dawned and the capital stock was then appraised at the sum of $450 per share, its par value being $100. The testatrix in "Article Thirteenth" of her will expressed the wish that the investment in each of the trusts should be maintained in the stock of the Brooks Locomotive Works, adding that if there was in the future any change of condition surrounding the business which in the judgment of a majority of her trustees required a sale of the stock for the preservation of the principal, it might be made. The testatrix had seen this stock largely increase in value when she created the five independent trusts. It is fair to assume that she was so impressed with the business future of the Brooks Locomotive Works as to direct her trustees to hold this stock unless satisfied to do so would place the principal in jeopardy. She was convinced that at the termination of the trust each beneficiary would receive not only the stock, but in all human probability a vast increase in excess of its par value.

One other fact should be alluded to in this connection as presumably exerting great influence on the mind of the testatrix. In all of these trusts the so-called life tenant and remainderman is one and the same person, subject to death under thirty years of age of the former, these terms being used as convenient forms of identification. Added to these

existing facts was the testamentary scheme that the life tenant could not finally receive the principal of the trust until attaining the age of thirty years. It was in this situation that the testatrix directed her trustees " to collect and receive the dividends, issues and profits thereof, and to apply the same to the use of," etc. (naming the beneficiary). The testatrix having deemed it prudent to postpone for a very considerable time the payment over of principal, and in view of the surrounding circumstances, it is quite reasonable that she should have ordered the payment over of dividends, issues and profits without directing the deduction therefrom of sums sufficient to meet the wearing away of premiums if the trustees should in the future see fit to invest this large increase of capital in securities at prices above par. It is fair to suppose that testatrix argued with herself that in all human probability the grandchild receiving the dividends, issues and profits from time to time would, on attaining the age of thirty years, receive the stock with enormous accretions, and that there was no reason why he should not receive the full income of the trust estate until that distant day should arrive.

I am of opinion that to establish a hard and fast rule, as suggested in the opinion under consideration, would not only work great hardship in many cases, but is an overruling of the decisions of this court already discussed and ignoring the principle of *stare decisis*. It is doubtless true that a testator ought to provide in his will as to where the loss in the wearing away of premiums should fall. It is, however, unfortunately the fact that wills in this respect and many others are left to construction after considering the language of the will, the condition of the parties and all the surrounding circumstances in accordance with the rule established by this court.

The order of the Appellate Division and the decree of the surrogate should be affirmed, with costs.

HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur with CULLEN, Ch. J.; VANN and WERNER, JJ., concur with EDWARD T. BARTLETT, J.

Ordered accordingly.