JEANNETTE BALLANTINE et al., trustees,

*v.*

ALICE J. YOUNG et al.

[Decided August 7th, 1908.]

1. Where testator at the time of his death owned bonds having a market value in excess of their par value, which bonds became a part of a trust fund created by the will, the income of which was to be paid to a person for life, with remainder over, the entire interest derived from the bonds belonged to the life tenant, and the trustee could not retain such an amount as would, at the maturity of the bonds, equal the premium at which they were valued at testator's death, unless there was a clear indication in the will to the contrary.

2. Where a testamentary trust fund to pay the income to a person for life with remainder over was invested by the trustee in bonds, maturing at a date certain, purchased by him at a premium, a deduction should be made from the interest received on the bonds, such as would at their maturity amount to the premium, unless there was a clear direction in the will to the contrary.

3. Testamentary trustees had had in their hands the entire trust funds to pay the income to persons for life, with remainder to their children. A part of the funds they erroneously, but in good faith, paid to the life tenants, calling it dividends. Another part they erroneously, but in good faith, withheld from the life tenants, under the name of indemnity fund, to make good wasting premiums on bonds in which the funds were invested. The children were infants.—*Held*, that the trustees were entitled to recoup themselves out of the fund in their hands under the name of indemnity fund, and, if necessary, out of moneys that might become due the life tenants.

On bill, &c.

*Mr. John O. H. Pitney,* for the trustees.

*Mr. Gilbert Collins,* for the infant defendants.

*Mr. Henry Young,* for the life tenants.

STEVENS, V. C.

This is a bill by trustees for direction in the performance of their duties under the trusts created by the will of John H. Ballantine. He died on April 27th, 1895, leaving a will which disposed of a large estate. The questions are such as have arisen between the life tenants and their children. They may be, for the purposes of this opinion, very briefly stated.

To his three sons, testator gave portions of his estate out and out. To his trustees he gave another portion, one-sixteenth, in trust for each son, reaching a certain age, his direction being

"they are to receive respectively only the interest or income during their respective lives; and, on the death of either of my said sons, the one-sixteenth part of which he was entitled to receive the interest under this clause, shall go to his child or children him surviving in equal shares."

Language substantially similar, as far as the present question is concerned, is used with respect to his daughter, Alice. She is to have "the interest and income during her life." The principal, part by Alice's appointment and part by the will itself, goes to her children at her death. One of the testator's children, Robert, has died without issue. The other children are living and have children.

The testator, at the time of his death, was the owner of bonds of the Long Dock Company, which then had a market value of $1,260 for each bond of $1,000. The premium was due, in the language of the bill, "to their great security and the high rate of interest they bore." Under a power given to retain investments made by testator

"and in order to preserve the principal of the estate against depreciation by a reduction in the value of said bonds as they approach maturity, the trustees have [I quote from the bill] set aside out of each installment of interest received from said bonds a sum sufficient, with other like installments similarly retained, to make up at the maturity of the said bonds a sum equal to the premium at which said bonds are valued and inventoried at the time of testator's death."

It is claimed by the life tenants that the interest thus withheld belongs to them and not to the ultimate beneficiaries, their children.

The trustees, under their powers of investment, have, since testator's death, bought other bonds, maturing at a date certain, and where bought at a premium, they have also reserved a part of the interest. The life tenants make a similar claim to this, and the question is whether, in the case of both classes, or of either class, of bonds, the retainer is justified.

As far as concerns the bonds held by the testator in his lifetime, there seems to be very little conflict among the decided cases. It is held very generally that in the case of such bonds the entire interest belongs to the life tenant, unless there is a clear indication in the will itself to the contrary.

In the case of bonds purchased at a premium by the trustees, after testator's death, the cases are in hopeless conflict. In Pennsylvania (*In re Penn-Gaskill's. Estate, 208 Pa. St. 346*), and in some other states, it is held that the entire interest in that case, too, belongs to the life tenant, while in New York, Massachusetts and Wisconsin, it is held that wasting premiums must be made good. It appears to me, on the whole, that the New York rule will, in the majority of cases, better effectuate the intent of the testator and better harmonize with the rule established in the somewhat analogous case of perishable or wasting property given to legatees in succession. *VanBlarcom* v. *Dager, 31 N. J. Eq.* (*4 Stew.*) *783; Helme* v. *Strater, 52 N. J. Eq.* (*7 Dick.*) *591.* Its rationale is thus explained (*In re Stevens, 187 N. Y. 471*), by Chief-Justice Cullen: "The justification for the rule is very apparent. The income on a bond having a term of years to run and purchased at a premium, is not the sum paid annually on its interest coupons. The interest on a $1,000 ten-year five per cent. bond, bought at one hundred and twenty per cent., is not $50, but a part thereof, and the remainder is a return of the principal. All large investors in bonds, such as banks, trust companies and insurance companies, purchase bonds on the basis of the interest the bonds actually return, not the amount they nominally return; nor is the premium paid on the bond an outlay for the security of the principal. All government bonds have the same security, the faith of the government; yet they vary in price, a variation caused by the difference in the rate of interest and the time they

have to run. It is urged that there is often a speculative change in the market value of a bond, and a bond may be worth more at the termination of the trust than at the time of its purchase. This has no bearing on the case. The life tenant should neither be credited with an appreciation nor charged with a loss in the mere market value of the bond. But apart from any speculative change in the market value, there is from lapse of time an inherent and intrinsic change in the value of the security itself as it approaches. maturity. It is this, and this only, with which the life tenant is to be charged. We therefore adhere to the rule declared in the *Baker Case,* that in the absence of a clear direction in the will to the contrary, where investments are made by the trustees, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the *McLouth Case* prevails, and the whole interest should be treated as income. * * * It is also to be said that unless the rule in the *Baker Case* is to be observed, the relative rights of life tenant and remainderman would largely depend upon the favor or caprice of the trustees, who might either buy a bond bearing a high rate of interest at a great premium and impair the principal, or buy a bond bearing a lower rate of interest substantially at par and preserve the principal intact."

The rule thus lucidly explained is that which, in both its branches, prevails in Massachusetts. *Hemenway* v. *Hemenway, 134 Mass. 446; New England Trust Co.* v. *Eaton, 140 Mass. 532; Shaw* v. *Cordis, 143 Mass. 443.* In the dissenting opinion of Justice Holmes, in the *Eaton Case,* will be found a strong statement of the opposite view, but it does not appear to me to be convincing.

The question relating to the sinking fund reserved on the bonds of the Chicago, Milwaukee and St. Paul Railroad Company is disposed of by the conclusion thus reached.

After testator's death, the Pullman company made an extra stock dividend. It appears to be conceded by all the parties to this controversy that nearly all of it represented money earned

after testator's death. The rule of apportionment is laid down in *Lang* v. *Lang, 57 N. J. Eq. (12 Dick.) 325,* and counsel are agreed that there is no difficulty in dividing it.

The last question to be decided arises in this wise: The four original trustees supposed that dividends declared after testator's death were income, and paid them over to the life tenants. The point came up, subsequently, in this court in *Lang* v. *Lang, 56 N. J. Eq. (11 Dick.) 604,* and Vice-Chancellor Emery held that the whole of such dividends were, in general, income and not principal. On appeal the court of errors and appeals held otherwise. Two of the trustees, now before the court, find themselves in the situation of having paid the life tenants' money, part of which should have been treated as principal. They ask that, if responsible for its return, they may be permitted to apply so much of the moneys, now or hereafter in their hands, belonging to the life tenants, as will make the capital fund good. They have accumulated a considerable fund to make good the wasting premiums in the case of investments made by testator. They acted in perfect good faith and in accordance with that view of the law which had been adopted by many courts. Did the trustees represent nobody but themselves, there might be the difficulty suggested by the case of *Horne, 1 Ch. 76 (1905)*. But they represent infant *cestuis que trust*. These infants, not being bound by the statute of limitations, are in a position to claim a return of the money, both from the original trustees and from the life tenants. The present trustees, as the representatives of these infants, must have a similar right. No final account has been made or could be made. The matter stands thus: The trustees have had in their hands the entire trust fund, principal and interest; a part of it they have erroneously, but in good faith, paid to the life tenants, calling it dividends. Another part they have in good faith, but erroneously, withheld from the life tenants under the name of indemnity fund. Now it is quite inconceivable that, having money in hand which equitably belongs to the infants, they should be compelled to give up a portion of it to those who have been overpaid, and then be compelled to make good the fund out of their own pocket.

The argument may be put a little differently. The infants are substantially complainants. They say to the original trustees, you have erroneously taken money from the capital fund belonging to us and paid it to the life tenants; you have put into the capital fund money of the life tenants, to which, under the name of indemnity fund, we have no claim. We pray that you may be restrained from taking any money out of the capital fund, under whatever designation you may have put it in, unless it exceeds in amount that which we are entitled to. We have the right to insist that the fund be kept intact. That the dividends were paid out ten or twelve years ago makes no difference, for the statute of limitations does not bar us. If, having the money in hand to make good our capital, you give a portion of it to the life tenants, you commit a breach of trust.

It seems to me that the right of the infants is quite clear, and that the cases go to the length of allowing the trustees not only to recoup themselves out of the fund in hand, so far as held under the name of indemnity fund, but, also, if necessary, out of the moneys that may become due the life tenants. *Livesey* v. *Livesey, 3 Russ. 287; Dibbs* v. *Goren, 11 Beav. 483; Harris* v. *Harris, 29 Beav. 110.*

I think that the argument based upon the idea that *Lang* v. *Lang* introduced a new rule of law on the subject of the apportionment of dividends, and that *Lister* v. *Weeks, 60 N. J. Eq. (15 Dick.) 225; 61 N. J. Eq. (16 Dick.) 675,* so held, is altogether untenable. That was a case in which it was sought to remove a trustee from office because of misfeasance. The court merely held that the mistake of the trustee in paying the dividend there in question was no ground for removal. The other cases cited do not sustain counsel's position.