OLD COLONY TRUST COMPANY & another, trustees, *vs.*
A. BARR COMSTOCK, guardian *ad litem.*

(Four Accounts.)

Suffolk.     March 7, 1934. — April 4, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, & LUMMUS, JJ.

*Trust,* Principal and income.    *Evidence,* Relevancy.

It was proper for a trustee, under an instrument containing provisions that he should pay the "whole of the net income of the" trust fund to a life beneficiary and should not "have power to withhold net income from" that beneficiary, to amortize a premium paid by him in purchasing a bond as an investment by deducting and retaining from the interest received on the bond during its term sums sufficient in the aggregate to restore the amount of the premium to the corpus of the trust at the maturity of the bond, the trust instrument containing no provisions with respect to amortization.

It also was proper for such trustee, after purchasing at a premium a bond callable at a certain date before maturity, to amortize the premium upon the basis of the call price and date rather than upon the basis of the amount of the bond and the date of maturity, if, in the exercise of reasonable judgment, he deemed that the bond would be called.

It was improper for such trustee, after purchasing preferred stock callable at any dividend date at a price less than the purchase price, to amortize the difference between such prices over a certain period fixed by him because of his belief that the stock would be called; the factors upon which such amortization was based were conjectural.

In the absence of any provision touching the matter in the trust instrument, it was proper for such trustee, after purchasing a bond below par, not to pay or accumulate as income sums equivalent in the aggregate to the amount of the discount.

At the hearing of a petition for the allowance of an account of such trustee, at which the issue was the propriety of his accounting practice with respect to such premiums and discount, it was proper to exclude, as remote, evidence as to his practice in connection with another trust; and to exclude evidence, offered in behalf of the life beneficiary, to show the practice of trustees in general in the locality, the petitioner not having offered evidence of that nature.

Four petitions, filed in the Probate Court for the county of Suffolk, for the allowance of the first, second, third, and fourth accounts of the petitioners as trustees under the will of William C. Winslow, late of Boston.

The petitions were heard by *Poland,* J., by whose order a decree was entered allowing the accounts with certain modifications. The petitioners and the respondent appealed. Material facts are stated in the opinion.

*A. B. Comstock,* (*F. H. Free, Jr.,* with him,) for the respondent.

*H. L. Burnham,* for the petitioners.

Rugg, C.J. This case comes before us on appeals by all parties from a decree of a probate court which allowed with modifications the four accounts of trustees under the will of William C. Winslow for the benefit of his daughter, Mary Whitney Winslow. The latter, being incompetent, was represented by a guardian *ad litem,* who objected to the accounts. The testator left the residue of his estate in trust for the primary benefit of his wife and daughter. The wife predeceased him. By an agreement of compromise approved by the court, it was provided that the "whole of the net income of the residue of the estate, real and personal, . . . shall be paid to said Mary Whitney Winslow during her life, and no trustee or trustees under said will shall have power to withhold net income from said Mary Whitney Winslow."

The portions of the accounts assailed by the guardian *ad litem* relate to securities purchased by the trustees as investments and not to any taken over from the executor of the will of the testator. The accounts begin with May, 1925. The will of the founder of the trust contains no directions as to amortization of bonds purchased at a premium and no provisions bearing on that subject.

1. The trustees purchased at a premium bonds as an investment for a part of the trust fund. They had thus paid for the investment a greater sum than would be repaid at the maturity of the bond. They then ascertained the actual net income from the bonds, based upon the premium, the rate of interest and the date of maturity, and paid the net income thus ascertained to the life tenant and retained the difference between the net income thus ascertained and interest in fact received as an accumulating fund which at the maturity of the bond would leave the original capital of the trust unimpaired or intact. Stated in another form of words, they deducted from each interest or coupon payment on the bonds equal instalments sufficient in amount in the aggregate to bring the purchase price of the bonds to par at maturity, paying only the balance of each such payment to the life tenant. Thus the accounting value of the capital of the trust would be restored. This is termed amortization of the amount paid as premium on the bonds purchased. Such amortization has been held to be a proper method of accounting for trustees in this Commonwealth. *New England Trust Co.* v. *Eaton,* 140 Mass. 532. That decision was rendered after ample discussion. It covers every aspect of the question. There is no indication in the prevailing opinion of a purpose to overrule *Hemenway* v. *Hemenway,* 134 Mass. 446. It was recognized that the decision in the *Hemenway* case rested upon the peculiar circumstances of the case; its only inconsistency with *New England Trust Co.* v. *Eaton* may well rest on the principle that the slight premium paid on a bond investment, constituting a very small proportion of a large estate, was too insignificant to be considered. The decision in *New England Trust Co.* v. *Eaton* is direct and unequivocal. There is no

occasion again to go over the ground so completely covered by that case. It may be presumed to have been accepted by trustees and beneficiaries as expressing the deliberate opinion of the court. It has doubtless been adopted by trustees, life tenants and remaindermen as a guide in making investments and distributing income and in maintaining the corpus of trusts. It is upheld by the great weight of authority elsewhere. *Estate of Gartenlaub*, 185 Cal. 648, 650–651. *Curtis* v. *Osborn*, 79 Conn. 555, 560–561. *Ballantine* v. *Young*, 4 Buch. 572. *Matter of Stevens*, 187 N. Y. 471, 475–476. *Estate of Wells*, 156 Wis. 294, 309–310. There are, however, decisions to the contrary. *Penn-Gaskell's Estate*, 208 Penn. St. 346, 348. *Hite's Devisees* v. *Hite's Executor*, 93 Ky. 257, 268. *American Security & Trust Co.* v. *Payne*, 33 App. D. C. 178. They do not seem to us to shake the soundness of our own, and the prevailing, rule. It is not clear from *Whitridge* v. *Williams*, 71 Md. 105, 109, whether the attempt to repair the depreciation of the principal related to the estate left by the testator, or to other property, and hence it cannot be regarded as an authority on this point. Amortization items with respect to Federal tax laws are not pertinent to the present inquiry and need not be discussed. *New York Life Ins. Co.* v. *Edwards*, 271 U. S. 109, 116. *Old Colony Railroad* v. *Commissioner*, 284 U. S. 552. *Helvering* v. *Union Pacific Railroad*, 293 U. S. 282, 287. In no one of these decisions is there adverse comment on amortization as. a principle in the management of trust estates.

2. The trustees made investments in bonds purchased at a premium having a call price and date. In accounting, they applied the principle of amortization to that call price and date whenever amortization to maturity would not reduce the book or accounting value of the bond to the call price by the call date. In our opinion it cannot rightly be held that this was an improper method. The trustees were required by the terms of the trust to pay the whole of the net income to the life tenant. The coupon of a premium bond does not represent the true net yield of that bond. In weighing the relative desirability of investment

in particular securities, a prudent trustee would be influenced, not by the apparent interest rate of the bond under scrutiny but by its yield over the period during which there may be reasonable expectation of holding it. His desire is to retain the principal intact and to secure a yield as income from the investment during that period. If, in the exercise of reasonable judgment, the call date measures the period during which he will hold that particular investment, he cannot be said to err if he calculates the yield to that date. It is common knowledge that some securities, such as government bonds selling at a premium, are quoted in newspapers as yielding a specified rate to their call date. Careful investors would not amortize to maturity a bond callable before maturity if such call would result in the diminution of the principal. The reasoning of *New England Trust Co.* v. *Eaton*, 140 Mass. 532, approving amortization of premium bonds to maturity, applies with equal force to amortizing premium bonds to the call date and price when there is occasion for it.

3. The trustees invested a part of the trust fund in a preferred stock callable on ninety days' notice at any dividend date at a figure less than the purchase price; they then withheld a part of the dividends received on this stock as an amortization fund to insure the retention of the principal of this investment. In the exercise of their best judgment the trustees, believing the stock would be called, established an amortization rate to reduce the accounting value to the call price at the end of five years. There was no fixed call date. A trustee is given a wide discretion in making investments. *Kimball* v. *Whitney*, 233 Mass. 321, 331–332, and cases collected. This discretion in general should not be circumscribed by hard and fast rules as to the management of such investments. If the accounting of a trustee is uniform and in accordance with sound practice and reasonable judgment, it commonly ought not to be upset. But we think that the factors respecting this callable stock were too indefinite to justify the application of amortization. There was no fixed term for it to run and no definite call date. The time, if ever, when it might be

called depends upon many contingencies not susceptible of being known. The ground for the selection of five years rather than a longer or shorter period does not appear. The elements which ought to enter into amortization of such an investment are vague and uncertain and amount to conjecture or speculation. Without undertaking to lay down a rigid canon of trust management, we are of opinion that the facts of this case do not warrant amortization as to this stock.

4. It is contended in behalf of the life tenant that, if there is to be amortization of premium bonds, there should also be accumulated and credited to income some part of the discount resulting from the purchase of bonds below par. The facts in the case at bar present this question clearly. In July, 1925, the trustees bought five per cent bonds of the United Electric Securities Company having a par value of $2,000 and maturing in January, 1955, for $1,920. These bonds were called for payment in January, 1928, and the trustees received therefor $2,060. They credited principal with a gain of $140. They also purchased four and one half per cent certificates of indebtedness of the United States having a par value of $13,000 for $12,973.13; these matured and were paid at par, realizing $26.87 more than the cost, which also was credited to principal. This question is a novel one in this Commonwealth. It is a matter about which provision might be made in the trust instrument. There is no such provision in the will of the present testator. There is much force in the argument that as matter of pure logic, if there is to be amortization of premium bonds for the benefit of the corpus of the fund, there ought also to be accumulation out of discount for the benefit of the life tenant. That theory is strongly put in an annotation in 48 A. L. R. 689–710. There are, however, practical considerations which we think lead to the conclusion that such accumulation ought not to be made. There is in truth no fund out of which such accumulation from discount may be made. It is in the main the duty of the trustee to keep the corpus of the trust fund invested. The discount is not in fact realized until the bond

is paid either at maturity or on call. If the payment of the proportional increment of the discount is to be made to the life tenant with each instalment of income, the money must be procured from some source. There is no obvious source from which it may rightly be obtained in the ordinary estate. This theory rests upon the assumption that every bond purchased by a trustee is safe and will be paid at par on call or at maturity. That assumption is not in every instance true. Losses occur. A trust investment may be justified although it turns out to be unsafe. *Lovell* v. *Minot*, 20 Pick. 116. If the income has been disbursed on the footing that the discount will be paid, and that expectation should be disappointed, the corpus of the trust must suffer the loss to the extent it has been drawn upon in anticipation of full payment. If the discount should not be realized, the trustee would be in an unfortunate position if he had attempted to forestall an event which did not come to pass. If payment is delayed until the bond is paid and the discount realized, the life tenant at that time may not be the one chiefly intended to be benefited by the founder of the trust. The amount of discount at which a bond may be purchased is not dependent on any single feature. As was said in *In re Account of Houston's Trustees*, 19 Del. Ch. 207, 213, "the amount of the discount at which a bond is bought is the blend of a number of possible contributing causes, among which the nominal rate of interest in its relation to the market rate is one. It cannot be said to be the only one. Purely accidental circumstances may be . . . important factors. A safe bond which accidental circumstances have depressed may very properly be bought by a trustee not because it is a good speculation, for trustees have no right to speculate, but because it is a safe investment at a bargain price. When the accidentally depressing circumstances are removed, the bond will experience an accidental increase in value — a sort of increase which by all the authorities belongs to corpus. Yet notwithstanding this, those who follow the lead of logic from the assumed premises before referred to, would give all that accidental increase to income." All the

factors of value, except only the rate of interest, which enter into the discount price of a bond and which are realized upon payment belong to the corpus of the investment. If the bond decreases in value due to any of these factors, the loss must be borne by the principal; it cannot in any circumstances be charged to the life tenant. Concerning the theory embodied in the contention of the life tenant, it was said by Holmes, J., in the dissenting opinion in *New England Trust Co.* v. *Eaton*, 140 Mass. 532, at page 547: "I must believe that such a doctrine would disconcert trustees not a little."

No decision, so far as we are aware, supports this contention of the life tenant. There are several authorities rejecting it after consideration. *Estate of Gartenlaub*, 198 Cal. 204. *In re Account of Houston's Trustees*, 19 Del. Ch. 207. *Wood* v. *Davis*, 168 Ga. 504. *Townsend* v. *United States Trust Co.* 3 Redf. Surr. (N. Y.) 220, approved in *Matter of Final Accounting of Gerry*, 103 N. Y. 445, 450–451.

The normal view is that gains in value of investments belong to capital and are to be credited to the principal of the trust fund rather than to income. The gain represented by discount realized by payment on call or maturity of a bond naturally falls within this rule. The application of this principle is simple. It avoids many difficulties as to accounting and as to payments of increment of expected but unrealized income to the life tenant. It is in accord with all the decisions of courts by which the subject has been considered. There is a possible appearance of inconsistency in allowing amortization of premium bonds to maintain capital and in denying allowance of discount on bonds for the benefit of the life tenant. We think that in this respect the decree was right. The practical advantages likely to flow from a simple rule, easy of comprehension and application, apparently based on experience and avoiding the possibility of impairment of the principal fund, overbalance the benefits of logical consistency.

5. There was no error in the exclusion of evidence as to the accounting practices of the testator and one of the trustees in the case at bar in another estate. It involved

the consideration of a collateral matter and was very remote from the issues here to be decided. Moreover, there was no offer of proof. The offer of proof by the guardian *ad litem* of the result of inquiries by a witness among trustees in Boston, as to their practice touching amortization, was excluded rightly. The accountants had not offered evidence of this nature. The witness appears not to have had personal knowledge on the subject but to have been prepared to report hearsay.

The result is that the decree of the Probate Court was wrong in paragraph III thereof in declaring that amortization to the call date of premiums paid by the trustees on the purchase of premium bonds was improper. The other paragraphs of that decree were free from error. The decree is reversed to the end that it may be corrected to conform to this opinion. Costs as between solicitor and client to be paid out of the estate are to be in the discretion of the Probate Court.

*Ordered accordingly.*