In the Matter of the Estate of HENRY BREWSTER, Deceased.

Surrogate's Court, Monroe County, July 13, 1937.

Judson A. Parsons, for the trustee.

J. Sawyer Fitch, special guardian.

FEELY, S.   Out of the principal of this $200,000 trust fund, some bonds, to mature October 1, 1947, subject to prior call, worth $10,000 at par, were purchased in 1929 by the trustee at $11,187.50; and were called in and paid off October 1, 1936, at $10,500.   Meantime part of this cost, to wit, seven-eighteenths, or $461.41, had been repaid to principal out of income, in installments, leaving outstanding now a balance of $226.09 needed to restore the principal, which balance the trustee-beneficiary claims should be borne by the principal, over the objection of the special guardian for some of the remaindermen, the claim being that a different rule applies when a bond is called, at or above par, but at less than cost, before maturity than applies, if there were no call, under the so-called sinking fund rule for the amortization of the advance out of principal for the premium and its restoration to principal.

The general rule may be regarded as having been already settled when the Court of Appeals in 1907, in *Matter of Stevens* (187 N. Y. 471), said (at p. 476): " While we admit   *   *   *   that the terms of the will may be such as to take a case without the general rule that the principal of the fund must be preserved intact, we think that to justify such an exception to the rule the intent should be expressed in the *very clearest manner*.   If we are to lay down the doctrine that the question is to be determined on the peculiar facts and language of each particular case, no trustee will know how to act safely, and a question constantly arising in the administration of estates will be involved in great confusion and be the cause of great litigation, the latter often at an expense to the estate greater than the sum involved.   Such a result would prove very unfortunate.   *   *   *

" We, therefore, adhere to the rule declared in the *Baker Case* [*New York Life Ins. & Trust Co.* v. *Baker*, 165 N. Y. 484], that in the absence of a *clear direction* in the will   *   *   *   where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run."

From this point of view, this testator's last will gives no hint of his intention beyond what might be inferred from the fact that he set up in 1877 a trust for the benefit of his widow and their two infant daughters, both of whom were then under the age of ten years, on a corpus of about $35,000, giving the widow the right of testamentary appointment over the third from which she was to have the income during her life; whereas each of the thirds for the daughters was to yield them income for their lives, with remainder over to their heirs, or failing such, then to his own heirs, without the daughters having any similar or express interest whatever in

the corpus such as the widow was given. At best, hers was but a dry right as respects any personal enjoyment by her during her lifetime either of income, or of principal, if a power of invasion were conferred, such as was given in *Matter of Fisk* ([1904] 45 Misc. 298); but not even a like power to appoint was given to the children herein. It is very doubtful that testator ever foresaw the sudden increase in value that occurred forty years after his death in 1877. He apparently left on the children the burden of keeping the principal intact, which now is no hardship in view of the recently augmented corpus (*Gould* v. *Gould*, 126 Misc. 54), and income.

Had this instant claim been raised by the widow, now dead, possibly some support for her claim might have been found in her status alone, upon the liberal interpretation that was commonly given to provision for a widow. However, the children — of whom this trustee-beneficiary is now the sole survivor, to whom all the income, generally speaking, has been paid — had no power of appointment, nor of invasion for any purpose. Thus, in its present application, this testator's will fails both to rise above implications, and also to give the " very clear direction " which public policy now requires. (*Matter of Stevens, supra.*)

In a ruling made in the year before the *Stevens* decision, it had been said that where the will directed the purchase of certain securities for a trust to pay income to testator's daughters for their lives, with remainder over to their children, that " very slight indications " would suffice to support a ruling favorable to the daughters in respect to their being deemed to be entitled to the entire income, with the result that the principal would have to bear the premiums absolutely. (*Lynde* v. *Lynde*, [1906] 113 App. Div. 411.) But a different result had already been reached in 1901, in the case of *New York Life Ins. & Trust Co.* v. *Baker* (165 N. Y. 484), where although the income of a trust was given to a son for his life, with remainder over to his children, the income was required to make good the principal for the advance to pay premiums on securities bought by the trustee. So, it was this ruling that was reaffirmed in 1907 in the *Stevens* case (*supra*), in a manner that should leave no doubt thereafter as to the law in such matters.

Thus, the present question is narrowed to the inquiry whether the fact that this security was called in and paid before its fixed date of maturity presents any different situation as regards depleting principal than if no such call had been made, and payment came at the fixed date of maturity. Concededly, when the trustee bought these bonds he must have known that they were subject to being called in for payment, at the option of the obligor, before the fixed maturity. " It is common knowledge that some securities,

such as government bonds selling at a premium, are quoted in newspapers as yielding a specified rate to their call date." (*Old Colony Trust Loan* v. *Comstock*, [Mass.] 195 N. E. 389.)

The bonds were not called in until last autumn. Up until then the sole beneficiary had acquiesced in the proportionate abatement of her income based on the full term of the security. No loss to corpus was directly caused thereby, as her income is relatively abundant; nor can the beneficiary be said to have estopped herself to claim that in the peculiar circumstances of this case, the corpus should now bear the portion of principal still outstanding. (See *Matter of Schaefer*, 178 App. Div. 117.)

The counsel for the trustee-beneficiary contends for a conclusion which would have to be adopted if the ruling made in 1881 by the Supreme Court in *Farwell* v. *Tweddle* (10 Abb. N. C. 94) were still to be recognized as binding where general principle, rather than manifest, particular intention, were the sole reason for decision. This report is silent as to the terms of the will beyond stating a trustee was to pay income for life; and that he bought United States 6s at a considerable premium. Later the Treasury, under its privilege to call the bond for payment after five and before twenty years, paid off these bonds at par. It was there held that if the bonds had been absolutely payable at the time when called in, the loss of premium would have been chargeable on the income; but the privilege of paying before maturity, being a contingency for which no calculation could be made, the calling of the bonds was a " misfortune " to be borne by the principal, to which must be charged the excess of loss over what would have been sustained if the bonds had run to maturity. The court likened the " misfortune " to a " disaster, which befell the property, like the failure to collect the whole amount payable upon a mortgage. It reduced the principal and thereby the income derived therefrom."

This is the only case yet found in this State where the ruling was reasoned out; that is to say, it is a solitary case that has been followed once only — and then without comment — in *Whittemore* v. *Beekman* ([1883] 2 Dem. 275); but neither of those two cases has ever been cited in respect of a call. In the latter case the report is silent also as to the terms of the trust under which some United States 5s were bought at a premium and a broker's commission. They were soon redeemed, and paid off with interest to a date subsequent to the actual payment. This excess interest was held to be in the nature of a bonus; but the premium was not. The bonus was credited to principal; and the commission was charged to principal; and the loss of premium resulting from the redemption was charged to principal solely on the authority of *Farwell* v. *Tweddle*.

On its face, the decision in *Farwell* v. *Tweddle*, as a matter of general principle, distinct from a manifest, particular intention, runs contrary not only to modern actuarial practice generally; but also to the now well-established rule that corpus must be made good for the premium, in the absence of clear direction to the contrar: . Apparently, that case must now be regarded as obsolete and no longer binding on a like state of fact. The analogy in it to loss of principal on a mortgage is faulty, for in such cases there has never been any doubt that both appreciation and capital gain, as well as depreciation and loss, are features of corpus (See *Matter of Schaefer*, 178 App. Div. 117; affd., 222 N. Y. 533); "nor is the premium paid on a bond an outlay for the security of the principal" (*Matter of Stevens, supra*); whereas premium is always an incident of an attempt to derive income for the beneficiary exclusively, who, for that reason, should bear the cost. But as to just how this should be done, there is some difference in the opinions. In 1897 it was pointed out in *New York Life Ins. & Trust Co.* v. *Kane* (17 App. Div. 542) that a trustee had three courses open to him: to distribute the premium over the years of the term; or where there was a surplus of income to retain enough to make good the principal; or at the outset to charge all of the premium to income. However, as this latter course might, in some cases, work a hardship on the beneficiary, it was held in 1917 that such a gross deduction of the whole premium could not be made at the time of purchase; but that income should be charged a proportionate amount each year based on the term of the bond.

"While the trustees had the right to amortize the premium, they were bound to take into consideration the time when each bond was payable. Otherwise, if the life tenant died shortly after the deduction of a sum sufficient to amortize the entire premium paid on all the bonds, irrespective of the maturing of the several bonds, the remaindermen would be getting the bonds below their market price at the expense of the life tenant's income. * * * The proper rule is that in accord with the decision of the Court of Appeals in *Matter of Stevens* (187 N. Y. 471)." (*Matter of Schaefer*, 178 App. Div. 117, 133.)

In this particular phase of the application of the general rule to preserve corpus, it seems apposite to recall that the court in the opinion in *New York Life Ins. & Trust Co.* v. *Kane* (*supra*), said that each case must be considered by itself; that no universal rule can be laid down; that testator's intention is the first test; but if it be not properly expressed, then the court should do substantial justice as between the life tenant and the remainderman. Here, although there is only a single expectancy, one of about eight years,

preceding the enjoyment of the principal by the remaindermen, still the income is ample, and the $226.09 outstanding of the unrestored principal is a comparatively small sum, and can lawfully be presently deducted in a lump without inconvenience to the beneficiary, who is about to resign the trusteeship in favor of a corporate trustee; and it is desirable to close the account as regards that particular investment, which is no longer part of the trust. There is no authority now for letting such a beneficiary utterly escape any part of her duty to restore principal; and the special guardian urges that no such precedent be now set up in this case. What would be the ruling if there were successive life uses, or whether in case of a single life use, differently circumstanced, or in one of scanty income, or of large premium, or of brief expectancy, security could be required of the beneficiary as a condition either to purchasing at a premium, or to distributing the premium over the whole term of the obligation, it is not necessary now to discuss.

. For the reasons above stated, my conclusion is that the principle laid down in the case of *Farwell* v. *Tweddle* does not now govern this case; and that the only other pertinent ruling now known — aside from *Whittemore* v. *Beekman* — is one to the contrary recently (1935) made in Massachusetts in the case of *Old Colony Trust Loan* v. *Comstock* (195 N. E. 389), where the court said: " Careful investors would not amortize to maturity a bond callable before maturity if such call would result in diminution of his principal.

" The reasoning in *New England Trust Co.* v. *Eaton* (140 Mass. 532), approving amortization of premium bonds to maturity, applies with equal force to amortizing premium bonds to call date and price when there is occasion for it."

In the *Eaton* case the court states that its attention had been called to the ruling in *Farwell* v. *Tweddle* (*supra*). From another point passed upon in the *Comstock* case, it might be inferred that the rule in the *Farwell* case might possibly apply to a case where part of the trust fund was invested by the trustee in a preferred stock, callable at ninety days' notice at any dividend date, at a figure less than the purchase price. " The elements which ought to enter into amortization of such an investment are vague and uncertain and amount to conjecture and speculation. Without undertaking to lay a rigid canon of trust management, we are of opinion that the facts of this case do not warrant amortization as to this stock."

No such factual situation exists in the case at bar. The burden is on the beneficiary to show any such facts, other than those above stated herein.

The sum of $226.09, therefore, on the facts of this case, as disclosed on this argument, should not be charged to principal, but may be charged in gross to income in this accounting, unless the incoming trustee should choose to accept satisfactory indemnity for carrying it over.

Submit for signature and entry a decree in accord with this decision, on notice or appearance of counsel.