In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Trustee under the Will of CURTIS A. PETERS, Deceased.

Surrogate's Court, New York County, April 22, 1947.

*E. Lacy Finnan* and *Charles M. Baudinet* for City Bank Farmers Trust Company, petitioner.

*Thomas F. Murphy* and *Casimir J. F. Patrick* for Curtis A. Peters, Jr., also known as Peter Arno, respondent.

*George Thoms* for Charlotte L. Peters and Charlotte C. P. Peters, respondents.

*Alexander B. Halliday* for New York Association for the Blind, respondent.

COLLINS, S. The trustee is accounting for two separate trusts created by the testator. The life beneficiaries of both trusts and the remainderman of one have filed objections to the account which challenge the method adopted by the trustee for amortizing premiums on bonds purchased by it. The dispute between the remainderman and the life beneficiaries relates to the method of amortization of premiums on bonds which contain an option permitting the obligor to redeem them prior to the respective maturity dates.

The decedent died prior to the effective date of section 17-d of the Personal Property Law and since the will is silent in respect of amortization, the trustee is under the duty to amortize the premiums. The income beneficiaries argue that section 17-d establishes a policy of dispensing with amortization of premiums and that the court should limit rather than extend the amortization rule. The Legislature has expressly excluded from the operation of the statute a trust created by the will of a person who died before its effective date. In respect of the trusts so excluded, the court must apply the established rules to the particular facts of this case, without extending or limiting them.

The court will first consider the objections of the remainderman which relate in general terms to all bonds having a call date and specifically to four bonds which were in fact redeemed prior to maturity. The trustee amortized all premiums on the basis of maturity dates without regard to any call privileges contained in the bonds. Typical of the transactions to which objection is made are those involving the Philadelphia Electric Company bonds, purchased in 1938 and 1939 and due on March 1, 1967. The premium paid was $1,207.50. The trustee had amortized the premium to the extent of $268.33, when on November 3, 1944, the bonds were called for payment at a premium of $900. The account shows a principal loss of $39.17. In connection with the redemption of the three other called bonds, the losses are, respectively, $174.50, $189.36 and $67.81. If the premiums had been amortized to the respective call dates, there would, of course, be no principal losses. In respect of securities still held by the trustees, the remainderman objects to the failure to amortize the premium to the respective call dates of the bonds.

There are no appellate decisions dealing expressly with amortization of premiums on bonds which contain privileges to call them for payment prior to maturity. The lower court decisions are few and are in conflict. In two early cases it was held that no calculation need be made for the privilege of paying before maturity (*Farwell* v. *Tweddle,* 10 Abb. N. C. 94 [1881]; *Whittemore* v. *Beekman,* 2 Dem. 275, 285 [1883]). The privilege of early payment was said to be " like a misfortune or a disaster, which befell the property — like a failure to collect the whole amount payable upon a mortgage." (*Farwell* v. *Tweddle, supra,* p. 96.) In a recent decision (*Matter of Brewster,* 163 Misc. 820, 824 [1937]) Mr. Surrogate FEELY expressed the opinion that these cases were contrary to the established general rule " that corpus must be made good for the premium " and held that the premiums should have been amortized on the basis of the call date.

The general and well-established rule applicable in this case is that a trustee who has invested funds in bonds purchased at a premium is under a duty to set apart each year out of the income of the bonds a sufficient sum to form a sinking fund of such extent as to make good the amount paid in premiums and to keep the principal unimpaired. (*New York Life Ins. & Trust Co.* v. *Baker,* 165 N. Y. 484; *Matter of Stevens,* 187 N. Y. 471, 475.) " The justification for the rule is very apparent. The income on a bond having a term of years to run and purchased at a premium is not the sum paid annually on its interest coupons. The interest on a $1,000 ten-year five per cent bond, bought at 120%, is not fifty dollars, but a part thereof only, and the remainder is a return of the principal. All large investors in bonds, such as banks, trust companies and insurance companies, purchase bonds on the basis of the interest the bonds actually return, not the amount they nominally return. Nor is the premium paid on the bond an outlay for the security of the principal. All government bonds have the same security, the faith of the government; yet they vary in price, a variation caused by the difference in the rate of interest and the time they have to run. It is urged that there is often a speculative change in the market value of a bond, and a bond may be worth more at the termination of the trust than at the time of its purchase. This has no bearing on the case. The life tenant should neither be credited with an appreciation nor charged with a loss in the mere market value of the bond. But apart from any speculative change in the market value, there is from lapse of time an inherent and intrinsic change in the value of the

security itself as it approaches maturity. It is this, and this only, with which the life tenant is to be charged." (*Matter of Stevens, supra,* pp. 476, 477.)

The amount of the premium that a bond will command depends upon various factors. There must be considered, of course, the financial standing of the obligor. But even in respect of different bond issues of the same obligor the amount of the premium will vary. All other things being equal, the premium will depend upon the rate of interest the bond pays, the length of time it has to run and the prevailing market rate of interest. (36 Mich. L. Rev. 514.) No prudent investor would pay a high premium on a bond that was callable any time at par. " It is common knowledge that some securities, such as government bonds selling at a premium, are quoted in newspapers as yielding a specified rate to their call date. Careful investors would not amortize to maturity a bond callable before maturity if such call would result in the diminution of the principal." (*Old Colony Trust Co.* v. *Comstock,* 290 Mass. 377, 381.) In determining whether or not to risk trust funds in the purchase of a bond at a premium, a careful trustee must consider its yield over the period during which he may reasonably expect to hold it. He must take thought of the *real* income that will be available for the income beneficiaries and the necessity for reimbursing principal for the premium. Particularly in recent years when corporations having high interest bonds have refunded them at the first opportunity for bonds at a lower interest rate, a trustee must consider the fact that as the bond approaches the call date its market value will diminish even if the call privilege is not in fact exercised. There will be from the very lapse of time an inherent change in the value of the security itself and it is this inherent change " with which the life tenant is to be charged." (*Matter of Stevens, supra,* p. 477.)

The life beneficiaries contend that the rule laid down by the Court of Appeals requires amortization only to maturity date, citing a portion of the text of the decision in *Matter of Stevens* (*supra,* p. 475) that " where trust funds are invested by the trustee in bonds having a term of years to run and purchased at a premium, such a proportionate deduction should be made from the nominal interest as will, at the maturity of the bonds, make good the premium paid, and thus preserve the principal of the fund intact." They emphasize the words " at the maturity of the bonds " and argue that the court determined that amortization should be made in all cases on the basis of maturity

date. Neither the decision of the Court of Appeals nor the record on appeal indicates that any of the bonds in that estate contained call privileges. The appellant there argued that there should be deducted from the interest collected " a sum sufficient to make good at the maturity of the bonds the amount paid as a premium " (*Matter of Stevens, supra,* p. 475). It was contended by the trustees that under the provisions of the will no amortization was required. The Court of Appeals ruled in favor of the appellant on this issue. The decision cannot be construed as fixing maturity date rather than call date as the proper basis for amortization. On the contrary a consideration of the entire decision of the court (as contrasted with isolated sentences removed from their context) makes it clear that the life beneficiary is to be charged with the change in the value of the bond which results from the lapse of time as it approaches the time of payment.

The court holds that the trustee should have amortized the premiums on the bonds to the respective call dates taking into account the various call prices specified in the bonds. (*Matter of Stevens, supra; Matter of Brewster,* 163 Misc. 820, *supra; Old Colony Trust Co.* v. *Comstock, supra;* 2 Scott on Trusts, § 239.2, p. 1337; 36 Mich. L. Rev. 514.) The objections of the remainderman are accordingly sustained.

The total surcharge against the trustee on the redeemed bonds amounts to $470.84. The income beneficiary of this trust has been overpaid in that amount. Where a trustee makes a payment to one of the beneficiaries of the trust in excess of that to which he is entitled, the beneficiary is personally liable for the amount of the overpayment and his beneficial interest is subject to a charge for repayment of the excess unless he has so changed his position that it is inequitable to compel him to make restitution. (Surrogate's Ct. Act, § 267; Restatement, Trusts, § 254; 2 Scott on Trusts, §§ 254-254.2; *Equitable Trust Co.* v. *Miller,* 185 N. Y. S. 661, affd. 197 App. Div. 391, affd. 233 N. Y. 650; *Matter of Wolfman,* 137 Misc. 325.) The amount of the overpayment is small as contrasted with the average annual income. There is no hardship or inequity in requiring the life beneficiary's interest to be charged with the overpayment and the trustee will be authorized to deduct that amount in equal installments from income payable to her during the course of a year.

The objections filed by the income beneficiaries go beyond their argument in answer to the remainderman's objections and are based upon the premise that it is improper to make any deduction at all from income to amortize premiums on bonds

that contain a call privilege. They point out that the rule of amortization is applicable in respect of a " premium on securities having only a definite term to run " (*Matter of Stevens, supra,* p. 477) and argue that bonds containing various call privileges have an indefinite period to run and thus do not come within the rule. There is no merit in this argument and the objections must be dismissed. The bonds involved in the objections contained definite dates on which they could be called for payment prior to the maturity date at fixed prices. These known factors supply a practicable basis for amortization of the premiums.

Submit decree on notice settling the account accordingly.